## McCORMICK HARVESTING MACHINE CO. *v.* AULTMAN.

## SAME *v.* AULTMAN–MILLER COMPANY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Nos. 130, 131. Argued December 1, 2, 1897. — Decided March 21, 1898.

If the owner of a patent applies to the Patent Office for a reissue of it and includes, among the claims in the application, the same claims as those which were included in the old patent, and the primary examiner rejects some of such claims for want of patentable novelty, by reference to prior patents, and allows others, both old and new, the owner of the patent does not, by taking no appeal and by abandoning his application for re-issue, hold the original patent (the return of which he procures from the Patent Office) invalidated as to those of its claims which were disallowed for want of patentable novelty by the primary examiner in the proceed-ing for reissue ; as the Patent Office, by the issue of the original patent, had lost jurisdiction over it, and did not regain it by the application for a reissue.

THIS was a question certified to this court by the Circuit Court of Appeals for the Sixth Circuit, involving the authority of a primary examiner of the Patent Office to reject as in-valid claims of an original patent which were incorporated in an application for a reissue.

It appears that the McCormick Harvesting Machine Com-pany filed a bill in equity in the United States Circuit Court for the Northern District of Ohio against C. Aultman et al., and also one against the Aultman-Miller Company, in each of

which it was sought to restrain the defendant from the future infringement of two patents covering automatic twine binders for harvesting machines. As the interests of the several defendants were closely identified the two cases were heard together.

The question certified involves only patent No. 159,506, issued to Marquis L. Gorham, February 9, 1875, and the other patent sued upon will therefore not be considered. The record shows that there was filed in the Patent Office by the executrix of Gorham an application for a reissue of this patent, in which were included several claims of the original patent, as well as many new claims. Upon consideration, the assistant or primary examiner decided that claims 3, 10, 11, 25 and 26 of the original patent should be rejected for want of patentable novelty, and reference was made to prior patented devices. No appeal was taken from this decision, and subsequently, in compliance with a request, the original patent was returned to the plaintiff corporation, which had become the owner thereof. Thereafter these suits were brought against the defendants upon the original patent.

In the Circuit Court it was decided, that as the original claims 3, 10, 11, 25 and 26 had been determined by the examiner to be invalid, and no appeal had been taken from that decision, but the same had apparently been acquiesced in, the adverse action must be regarded as fatal to the claims in question, and to the same extent as if the rejection had been incident to the original application for the patent. 58 Fed. Rep. 778.

Upon appeal the Circuit Court of Appeals decided that there was no infringement by the defendants as to claims 25 and 26, but that there was infringement of claims 3, 10 and 11 of the original patent, unless it should be determined that they were invalidated by their being rejected by the examiner upon an application for a reissue of the same; and, desiring instruction upon this point, it certified to this court the following question: "If the owner of a patent applies to the Patent Office for a reissue of it, and includes among the claims in the application the same claims as those which were included in

the old patent, and the primary examiner rejects some of such claims for want of patentable novelty, by reference to prior patents, and allows others, both old and new, does the owner of the patent, by taking no appeal and by abandoning his application for reissue, hold the original patent, the return of which he procures from the Patent Office, invalidated as to those of its claims which were disallowed for want of patentable novelty by the primary examiner in the proceeding for reissue ? "

*Mr. Robert H. Parkinson* for appellant.

*Mr. Thomas A. Banning,* (with whom was *Mr. Ephraim Banning* on the brief,) and *Mr. Edmund Wetmore* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The validity of the claims in question depends upon the view taken of the action of the examiner in rejecting them when incorporated in an application for a reissue of the patent, upon the ground that the claims were wanting in patentable novelty, as evidenced by prior patents cited by him. No appeal was taken from this decision, and the matter lay in abeyance for nearly two years before the plaintiff corporation, which had in the meantime become the owner of the patent, abandoned the application for a reissue and requested and obtained from the Patent Office the return of the original patent.

It has been settled by repeated decisions of this court that when a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government. *United States v. Schurz,* 102 U. S. 378; *United States v. Am. Bell Telephone Co.,* 128

U. S. 315, 363. It has become the property of the patentee, and as such is entitled to the same legal protection as other property. *Seymour* v. *Osborne*, 11 Wall. 516; *Cammeyer* v. *Newton*, 94 U. S. 225; *United States* v. *Palmer*, 128 U. S. 262, 271, citing *James* v. *Campbell*, 104 U. S. 356.

The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent. *Moore* v. *Robbins*, 96 U. S. 530, 533; *United States* v. *Am. Bell Telephone Co.*, 128 U. S. 315, 364; *Michigan Land and Lumber Co.* v. *Rust*, 168 U. S. 589, 593. And in this respect a patent for an invention stands in the same position and is subject to the same limitations as a patent for a grant of lands. The power to issue either one of these patents comes from Congress and is vested in the same department. In the case of a patent for lands it has been held that when one has obtained a patent from the Government he cannot be called upon to answer in regard to that patent before the officers of the Land Department, and that the only way his title can be impeached is by suit. *United States* v. *Stone*, 2 Wall. 525, 535; *Iron Silver Mining Co.* v. *Campbell*, 135 U. S. 286; *Noble* v. *Union River Logging Railroad*, 147 U. S. 165. But a suit may be maintained by the United States to set aside a patent for lands improperly issued by reason of mistake, or fraud; but only in the case where the Government has a direct interest, or is under obligation respecting the relief invoked. *United States* v. *Missouri, Kansas & Texas Railway*, 141 U. S. 358.

While a patent for a grant of lands is absolutely free from the future control of the officers of the Land Department after it has once issued, and jurisdiction over the matter cannot again be obtained, this is subject to a single qualification in the case of a patent for an invention where the patentee, his legal representatives or assigns, find the original patent inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his invention or discovery more than he had a right to claim as new (provided the error has arisen through inadvertence,

accident or mistake, and without fraudulent or deceptive intention). In such case a reissue will be granted by the Commissioner upon the surrender of the patent, but such surrender takes effect only upon the issue of the amended patent. This provision is embodied in Rev. Stat. § 4916, which also declares that "the specifications and claim in every such case shall be subject to revision and restriction in the same manner as original applications, . . . but no new matter shall be introduced into the specifications."

The plain purpose of this section is to give the patentee an opportunity to make valid and operative that which was before invalid and inoperative; invalid, because it claimed as new that which had been previously invented or used by the public; inoperative, because the specification was defective or insufficient. New matter cannot be introduced, nor can the scope of the invention be enlarged. All that the applicant can do is to so amend his patent as to enable him to receive some practical and beneficial result from his actual invention, of which he has been deprived by defects or omissions in the original patent. The object of a patentee applying for a reissue is not to reopen the question of the validity of the original patent, but to rectify any error which may have been found to have arisen from his inadvertence or mistake. But until the amended patent shall have been issued the original stands precisely as if a reissue had never been applied for, (*Allen* v. *Culp*, 166 U. S. 501, 505,) and must be returned to the owner upon demand. The fact that the rules of the Patent Office require that the original patent should be placed in its custody for the purpose of surrendering it upon the issue of an amended patent gives that department no right to the possession of it upon the rejection of the application for a reissue. If the patentee abandoned his application for a reissue, he is entitled to a return of his original patent precisely as it stood when such application was made, and the Patent Office has no greater authority to mutilate it by rejecting any of its claims than it has to cancel the entire patent.

In *Peck* v. *Collins*, 103 U. S. 660, an application for reissue made under the laws in force in 1866 was held to absolutely

extinguish the original patent. Subsequent to that time the law of 1870, of which Rev. Stat. § 4916 forms a part, was passed. Mr. Justice Bradley, in discussing the clause in that section which declares that the surrender "shall take effect upon the issue of the amended patent," said: "What may be the effect of this provision in cases where a reissue is refused it is not necessary now to decide. Possibly it may be to enable the applicant to have a return of his original patent if a reissue is refused on some formal or other ground which does not affect the original claim. But if his title to the invention is disputed and adjudged against him, it would still seem that the effect of such a decision should be as fatal to his original patent as to his right to a reissue." This same question was considered but not decided in *Eby* v. *King*, 158 U. S. 366; and in *Allen* v. *Culp*, 166 U. S. 501, 505, it was held that if the original application for a reissue be rejected the original patent stands precisely as though a reissue had never been applied for; but the effect of the refusal of the reissue upon some ground equally affecting the original patent was not considered.

In neither of these cases was this court called upon to decide the question which has been certified, and the expression of opinion in *Peck* v. *Collins*, relied upon by the defendants, must be considered merely a *dictum*, and lacking the force of a judicial determination.

In the case under consideration the examiner acted upon the application as if it were a new proceeding, and dealt with it as the evidence before him seemed to warrant, but his action in rejecting some of the claims which had been repeated from the original patent did not affect that patent. It is true that it was within his power to reject any claims contained in the application for a reissue which he judged to be invalid, whether contained in the original patent or not. It is also true that the reasons given for the rejection of such claims might apply equally to the same claims contained in the original patent; but with respect to such claims he was *functus officio*. His opinion thereon was but his personal opinion, and however persuasive it might be, did not oust the

jurisdiction of any court to which the owner might apply for an adjudication of his rights, and as the examiner had no authority to affect the claims of the original patent, no appeal was necessary from his decision.

Had the original patent been procured by fraud or deception it would have been the duty of the Commissioner of Patents to have had the matter referred to the Attorney General with the recommendation that a suit be instituted to cancel the patent; but to attempt to cancel a patent upon an application for reissue when the first patent is considered invalid by the examiner would be to deprive the applicant of his property without due process of law, and would be in fact an invasion of the judicial branch of the government by the executive.

Our conclusion upon the whole case is that, upon the issue of the original patent, the Patent Office had no power to revoke, cancel or annul it. It had lost jurisdiction over it, and did not regain such jurisdiction by the application for a reissue. Upon application being made for such reissue the Patent Office was authorized to deal with all its claims, the originals as well as those inserted first in the application, and might declare them to be invalid, but such action would not affect the claims of the original patent, which remained in full force, if the application for a reissue were rejected or abandoned.

The validity of the claims, so far as their merits are concerned, has been sustained by the Circuit Court of Appeals, and, as the original patent must stand precisely as though a reissue had never been applied for,

*The question certified to this court must be answered in the negative.*