## WESTCO–CHIPPEWA PUMP CO. v. DELAWARE ELECTRIC & SUPPLY CO. et al.

### No. 738.

District Court, D. Delaware.
Sept. 4, 1931.

George F. Scull, of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Cushman, Bryant & Darby, of Washington, D. C., and Charles F. Curley, of Wilmington, Del., for defendants.

NIELDS, District Judge.

This suit was brought by Westco-Chippewa Pump Company, owner of Wahle reissue patent No. 16,074, granted May 19, 1925, against Delaware Electric & Supply Company, a Delaware corporation, because of its sale in Delaware of pumps charged to be infringements. Decatur Pump Company, an Illinois corporation, the manufacturer of the pumps, intervened by leave of the court, and has assumed the defense of the case. References to the defendant will be understood to mean the Decatur Company.

The original Wahle patent No. 1,228,267 was granted May 29, 1917. All of the claims in the original patent are reproduced in the reissue patent. Claims 3 and 6 were claims of the original patent, and are the only claims in suit of the reissue patent. Claim 3 is the broader, and reads: "3. In a rotary pump, a casing having a passage extending circumferentially from a suitable inlet to a suitable outlet located adjacent thereof and having a circumferential slot in the annular transverse partition constituting the inner circumference of the same, of a rotor the axis of which is concentric to the center from which said axis is struck and which has an outer marginal portion which extends through said slot into said passage and is provided with a series of buckets therein each having a substantially flat bottom inclining from the periphery to the side thereof at a point adjacent said annular partition and separated by transverse blades."

The defenses are noninfringement and laches. The validity of the claims in issue is not questioned. In conceding validity, however, defendant takes the position that the Wahle patent is not directed to a principle of operation, but merely to details of mechanical structure, and, as the patentee has precisely defined his details of construction in the two claims in suit, there is, in view of the prior art, but little that is new involved in those claims; and, further, that as the defendant does not employ the details of construction specified in the claims in suit, but has developed a pump which mechanically is a more radical departure from the prior art than the Wahle pump, and involves a mode of operation substantially different from Wahle or the earlier art, defendant does not infringe.

In the ordinary centrifugal pump, a given particle of water leaving a blade does not re-enter the rotor. The rotor acts on it only once. Higher lift in such pumps can be obtained only by increasing either the peripheral speed of the rotor or by multiplying the number of rotors. Although both plaintiff's and defendant's pumps are classed as "centrifugal pumps," they operate on the principle of multiple engagement of the water with a single rotor as the water travels in a restricted passage from the inlet to the outlet with a barrier between inlet and outlet. Greater pressures are obtained by these pumps than can be obtained in the ordinary centrifugal pump. In the specification the patentee states: "The objects of my invention are to create a maximum centrifugal effect of the water passing through the casing of the pump while at the same time creating a vacuum by rapidly expelling the same, and to subject the water to the action of the rotor causing said centrifugal and vacuum effects for as great a distance as possible around the periphery of said rotor."

To accomplish these objects, the patentee illustrates and describes a centrifugal pump,

the principal features of which are a casing in two sections and a rotor. This casing has a circumferential water passage with closely adjacent inlet and outlet, and with a barrier across the passage to compel water from the inlet to travel the greater part of the entire circumferential passage before reaching the outlet. A rotor, having buckets open at the periphery and sides, with substantially flat bottoms extending from the periphery to the sides of the rotor, extends through a slot in the inner boundary of the water channel, with a clearance only sufficient to permit the rotor to turn with as little leakage of water through the slot as possible. There is an appreciable space in the water passage both beyond the rotor periphery and at its sides. The buckets of the rotor are so arranged with relation to this circumferential passage that, while rotating, water from the passage will enter the sides of the buckets nearer to the center of and remote from the periphery of the rotor. The water is engaged by blades of the buckets and brought up to the speed of the rotor. Centrifugal force and velocity are thus developed in the water by which it is thrown, as stated in the specification, "toward the sides of the channel J, and toward the outer circumference of the same." The pressure is imparted to the water in the passage. In the further progress of the water around the passage, it repeatedly enters the buckets, and the pressure is progressively increased. On being thrown from the buckets, the water particles follow a course which is neither radial nor axial, but a resultant of the two directions. It is directed and guided as it leaves the buckets into a more or less helical path around the circumferential channel from the pump inlet to pump outlet. By reason of this construction, some of the water is repeatedly engaged by the blades, the repeated action of the blades building up pressure in the water passage progressively from the inlet to the outlet. The blades of the Wahle pump are shown at right angles to the side of the rotor, and the bucket bottoms between them are not flat but slightly curved. The Wahle pump produces pressures higher than is possible with a centrifugal pump of the same diameter of rotor running at the same R. P. M. The water is repeatedly thrown into the water passage by centrifugal force, and, owing to its helical course, is repeatedly rebucketed, with consequent accumulation of pressure.

The alleged infringing pump is manufactured by the defendant by license under Burks United States patent No. 1,619,286, granted March 1, 1927. Its principal features are a casing in two sections and a rotor. One casing section is in the form of a disc having on one face a groove substantially semicircular in cross-section. This groove leads from the pump inlet to the pump outlet forming a circumferential passage. The inlet and outlet are adjacent, but separated by a web which fills the groove between the inlet and outlet, so that water entering the pump inlet must travel around the greater part of the circumferential passage before reaching the pump outlet. Defendant's rotor has in one face, spaced inwardly from its periphery, a circumferential groove facing the above-mentioned groove in the casing section. In the rotor groove blades are set inclined forwardly at 45° to the side of the rotor to form buckets. The bottoms of these buckets are approximately semicircular in cross-section. The rotor with the buckets fits closely against the groove in the casing section. The face of the rotor and the inner face of the casing are provided with V-shaped grooves and ridges to seal the water passage and to prevent leakage of water out of the water passage while permitting the rotor to turn in relation to the casing.

The water in defendant's pump is repeatedly engaged by the buckets as they travel through the water passage, and thereby a considerably higher pressure is developed than in the ordinary centrifugal pump. The water travels over substantially the same helical path as it does in the Wahle pump, being thrown out of the buckets and blades towards the circumference of the rotor by centrifugal force into the water passage, the walls of which direct the water so that some of it, after having passed through one bucket, is brought around into position to re-enter another bucket at a point inside the periphery of the rotor, and again is thrown out into the water passage by the blades of that bucket, by which repeated engagements the pressure is built up as the water progresses towards the pump outlet as in the Wahle pump.

Pumps of the type here in controversy filled the need for a small inexpensive pump required to deliver water against a high pressure and against a varying head or pressure. Such pumps have come into extensive use in domestic water supply systems, in pumping milk and cream, hot oils, and the like, and in boosting water from the ordinary city supply to the upper floors of high buildings.

Defendant admits that in operation its pump is similar to the Wahle pump to the extent that water is repeatedly engaged by

the buckets as it travels through the water passage, and thereby a considerably higher pressure is developed than in the ordinary centrifugal pump. It contends, however, that, due to differences in construction and location of the buckets in the two pumps, the action of the rotor upon the water is different. It is true there are differences in mechanical construction between the casing and rotor of the Wahle patent and defendant's pump.

■ Plaintiff relies on the doctrine of equivalents. Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717. The application of this doctrine, however, depends upon the character of the invention and upon whether the patentee is a pioneer. Cimiotti Unhairing Co. v. American Fur Ref. Co., 198 U. S. 399, 406, 25 S. Ct. 697, 49 L. Ed. 1100. While Wahle was not a pioneer in the sense of creating a new art, he was a pioneer in his class. In other words, while he did not create a new centrifugal pump, he created an entirely new type of such pump having an entirely new mode of operation. Being the first to conceive and give to the art such a pump, the court should be liberal in the construction of his patent to secure to him the reward he deserves. Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

Defendant strongly urges that under the facts the doctrine laid down by the Supreme Court in Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053, should be applied. The Supreme Court, speaking through Mr. Justice Bradley, said: "If one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute. But if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs. These general principles are so obvious, that they need no argument or illustration to support them."

To support its contention that there is nothing broadly novel in the Wahle patent, either from the standpoint of construction or mode of operation, the defendant relies on United States patent to Boulton No. 184,952, Andrews No. 390,332, Lindner No. 888,181, and Maier French patent No. 373,418. There is no evidence of commercial use of any of the pumps of these prior art patents. Only Boulton and Andrews need be discussed. Defendant's expert, Mueller, taking advantage of present-day knowledge, built a Boulton and Andrews pump following his interpretation of the drawings and specifications of those patents, and demonstrated their operation before the court, together with a Burks and Wahle pump. Plaintiff's expert, Ray, built and operated models of the Boulton and Andrews pump. I am not impressed with these demonstrations. They are of doubtful value, as the testimony of the experts is in sharp conflict. It is true that pressure tests taken by Mueller at four points around the water channel during the operation of the models indicated a certain building up of pressure from the inlet to the outlet in both Boulton and Andrews. From this fact Mueller draws the conclusion that this building up of pressure must be due to repeated engagement of the water with the buckets. On the other hand, Ray attributes such building up of pressure to eddy effects created in centrifugal pumps. Whatever may be the true cause of such building up of pressure as occurred in these models constructed for court demonstration, the fact remains that both the patents were issued many years ago, and that the art found nothing of value in them, and pumps constructed in accordance with their disclosures never went into commercial use. Such noncommercial use is strong evidence that in none of them was the invention of the Wahle patent disclosed. The Wahle invention went into commercial use almost immediately after it was first made, and has been in continuous, extensive, and successful commercial use since 1919. The language of Judge Buffington in Carnegie Steel Co. v. Cambria Iron Co. (C. C.) 89 F. 721, 738, is here peculiarly appropriate. He states: "In determining a question of this character it is a pertinent and reasonable inquiry, if it be true that the disclosure of an earlier patent was substantially that of Jones, why, during a period of many years, was it not practically applied to the same use? * * * That no one practiced the alleged anticipation, and that no one saw, or even suggested, such possibilities in it until after the later discovery was announced, are cogent facts which warrant the most convincing assurance to a court that such knowledge was conveyed in a neglected and dormant patent."

The rotor of the Boulton pump is like a paddle wheel. He provides a spiral volute at each side of the rotor, one for the inlet and one for the outlet. There is a marked difference of opinion between the experts in their construction of the specification and

drawings and particularly as to the relation of the ends of the volutes to each other. Plaintiff's expert finds that there is nothing in the patent which instructs the art as to the relation of the ends of the volute, and that if the practice in use in centrifugal pumps generally is applied to Boulton, then the ends of the volutes will be spaced apart so as not to interfere in any way with the simultaneous flow of water through all of the buckets of the rotor; in other words, that it is merely an axial-flow pump. Defendant's expert insists that the Boulton patent shows the volute ends overlapping, but admits that the amount of overlap is not shown. This difference of opinion carried into the construction of plaintiff's and defendant's model of the Boulton pump largely accounts for the difference in result obtained during the demonstration of such models. Whatever may be the fact in this connection, I think it clear that the Boulton construction is mechanically different from Wahle's, and does not disclose the Wahle mode of operation.

There is no dispute between the experts as to what Andrews discloses. He has a paddle wheel construction running in the lower half of a circumferential channel, with a pump inlet and pump outlet directly in this channel. He also has a barrier or partition between the inlet and outlet. Andrews left the bottoms of his buckets entirely open so that there is a clear passage at all times between inlet and outlet directly through the body of the rotor itself. The purpose of the circumferential channel as stated in the Andrews specification was to "enable comparatively large bodies of solid-material to pass with the water through the pump without choking the pump or cramping the rotary wheel." There can be no side bucketing of water, for the sides of the buckets are closed by the wall of the passage. The water cannot circulate in the Andrews construction as it does in Wahle. The Wahle patent calls for buckets with substantially flat bottoms. Andrews deliberately makes his buckets bottomless. The Andrews patent was issued in 1888. Not until suits instituted by plaintiff has any one advanced the theory of operation now claimed for it by defendant's experts.

I am satisfied that there is nothing in the prior art disclosing the Wahle invention or requiring claims 3 and 6 to be strictly construed. Nor are those claims limited to a narrow construction by the file history in the Patent Office. I fully agree with the statement of Judge West in Westco Chippewa Pump Co. v. Auto Prime Pump Co. (D. C.)

57 F.(2d) 556, that Wahle's advance in the art entitles him to a patent which would protect him "against other and later devices employing side buckets around the periphery of a rotor revolving in a restricted circumferential channel."

■ Does defendant infringe? Defendant's experts have sought to distinguish defendant's pump from the pump of the Wahle patent by differences relating to structural characteristics and efficiency but not to basic principles. As before stated, defendant's pump is manufactured by license under the Burks patent No. 1,619,286. It may very well be that the Burks pump embodies patentable modifications or improvements on the pump of the Wahle patent. "It is well established that an improver cannot appropriate the basic patent of another and that the improver without a license is an infringer, and may be sued as such." Temco Co. v. Apco Co., 275 U. S. 319, 328, 48 S. Ct. 170, 173, 72 L. Ed. 298.

Giving to claims 3 and 6 the liberality of construction and wide range of equivalents to which they are entitled, are the elements of those claims found in defendant's pump? The court should look through the specific wording of the claims and through the specific structure involved to see whether or not the defendant has taken the substance of the claims. The construction and function of the working parts of defendant's pump are essentially the same as the construction and function of the working parts of the pump of the Wahle patent. The defendant claims that the proportions specified by Wahle are entirely absent in defendant's pump. But no proportions are set forth in either claim 3 or 6, and such proportions as are specified in other claims cannot be read into these claims. Further, Wahle in his specification declares: "I do not wish to be confined to the exact proportions of the various elements of my invention as hereinbefore specified." The novel features of the Wahle patent are his circumferential passage with inlet and outlet openings closely adjacent, but separated by a definite barrier, and a rotor with buckets co-operating with such passage, the buckets being open at the side so that water can enter at a point toward the axis of the rotor and leave at a point toward the effective periphery of the rotor. It is clear that defendant has a like circumferential water passage. In Wahle the casing provides the top and two sides of the water passage. The bottom of the passage is formed by two flanges. These flanges do not meet, but are spaced apart to

form a slot through which the rotor extends with sufficient clearance to permit it to turn with as little leakage of water through the slot as possible. In defendant's pump the water passage is a semicircular groove. The groove in the casing section faces a like groove in the web of the rotor in which are located the blades forming the buckets of defendant's pump. Defendant's expert, Newton, referring to defendant's water passage, said: "Half of it (is) occupied by the blades on the rotor and the other half with nothing in it."

Each has a rotor. In Wahle the rotor is said to extend through a slot "into said passage," and provided with a series of buckets therein. From his drawings it appears that the buckets are the only portion of the rotor which extend through the slot into the water passage. Defendant's series of buckets carried in one of the semicircular grooves are in the water channel or passage functionally in the same sense as the buckets of Wahle. Defendant asserts that the buckets of its pump lack the "flat bottoms" specified by Wahle. The Wahle claims call for buckets with bottoms not "flat" but "substantially flat." Defendant's expert lays much stress on the fact that the bottoms of defendant's buckets are a half circle, and the bottoms of the Wahle buckets substantially flat, and that Wahle's rotor blades are set at right angles to the web of the rotor, while in defendant's pump they are inclined forwardly at an angle of 45°. He draws the conclusion that these differences result in a different mode of operation. In that conclusion I do not concur. Defendant's expert, Mueller, testified that "the difference between the Wahle pump and the Burks pump is this: In the Wahle pump you do your work with your blades, while in the Burks pump you do your work with the bottoms." Mueller, however, admits that centrifugal force necessarily plays some part in the operation of defendant's pump. Whatever difference in curvature in bucket bottoms there may be, it is merely a difference in structure and not of function.

█ It is unnecessary to refer to other elements of the claims. They cover mechanical means necessary in assembling an operative structure into which may be incorporated or mounted the above-mentioned essential elements of the Wahle patent and defendant's pump. It is clear that the means employed in the construction of defendant's pump are the mechanical equivalent of like elements in the Wahle claims. I am satisfied from all the evidence that the pump of the Wahle patent

and defendant's pump operate upon the same principle, and are structurally and functionally alike. I think infringement has been satisfactorily established.

█ To what relief is the plaintiff entitled? The defendant contends that the facts bar both an injunction and accounting. The plaintiff has come into a court of equity for relief. The principle was early laid down by the Supreme Court in M'Knight v. Taylor, 1 How. 161, 167, 11 L. Ed. 86, that "there must be conscience, good faith, and reasonable diligence, to call into action the powers of the court." It is likewise well settled by the Supreme Court that "laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 875, 36 L. Ed. 738.

The original Wahle patent was issued May 29, 1917. In May, 1921, Burks, the inventor of defendant's pump, and its general manager had a conversation with the attorney for the plaintiff as to construction details of defendant's pump, and exhibited the drawings of that pump which were afterwards filed with his application for patent. The object of the visit was to discuss the possibility of forming some business relation with plaintiff's predecessor. The result of the visit was a declaration by plaintiff's attorney that his company "would get some protection that would prevent the Decatur Pump Company from manufacturing the pump." Defendant began the manufacture of the infringing pump in the fall of 1921, and has continuously made and sold such pumps since that time.

The application for a reissue of the Wahle patent was filed January 23, 1922. The plaintiff admits that it knew in April or May, 1922 that defendant was manufacturing the pump charged in this suit to be an infringement. The Wahle patent was reissued May 19, 1925. No written notice of infringement of either the original or reissued Wahle patent was ever served upon the defendant from May, 1922, until the bringing of this action in July, 1929. No request was ever made by the plaintiff that defendant discontinue manufacture, nor was suit ever threatened, unless the indefinite statement made by plaintiff's counsel at a conference in January, 1926, that "Sometime plaintiff might have to sue the defendant," may be considered as a threat of suit. There is some

testimony that at the conference in January, 1926, between representatives of plaintiff and defendant, the Wahle reissued patent was discussed, and that plaintiff notified defendant to take a license thereunder. This defendant declined to do. There is some conflict in the testimony as to just what was discussed at this conference. However, it does not satisfactorily appear that anything was then said to the defendant by the plaintiff to indicate that plaintiff felt the defendant infringed any claims which had been granted in the original patent, and which were carried over into the reissue.

Aside from the lapse of time, the record establishes the fact that the position of the defendant materially changed from April or May, 1922 (when admittedly plaintiff acquired knowledge of the alleged infringement), to July 9, 1929, the time of the bringing of this suit. In December, 1921, the worth of defendant's predecessor was $56,000, including a valuation of $25,000 for patents and good will. Through the year 1922 there was paid into the company in return for stock $85,000. In 1922 defendant occupied a rented building; it had no factory of its own. Since 1922 its business has grown into a substantial one. Since May, 1925, it has acquired a new factory with complete new equipment. Over 27,000 pumps have been manufactured and sold, of which 24,000 have been sold since May, 1925. The rights of the purchasers must be considered, as each and all of them may be sued as infringers.

Under the foregoing facts, the burden is on the plaintiff to excuse its delay in bringing suit. Has it met that burden? The first excuse offered is that, as the application for a reissue had been filed on January 23, 1922, that application and the offer to surrender the original patent made the original unenforceable and barred the maintenance of any action on it, at least while the application for a reissue was pending. This proposition cannot be sustained. McCormick Machine Co. v. Aultman, 169 U. S. 606, 610, 18 S. Ct. 443, 42 L. Ed. 875. The reissue was granted May 19, 1925. Still no suit was brought or notice of infringement given to the defendant. This circumstance goes far to establish the fact that the pendency of the application for reissue was not a controlling factor on the question of bringing suit against defendant. I am satisfied from the evidence that the defendant was misled into believing that plaintiff did not consider that any claim in the original Wahle patent constituted a cause of action against the defendant. The plaintiff did nothing to correct this impression until the filing of this suit.

The evidence does not support plaintiff's plea of poverty as an excuse for not sooner bringing suit.

While courts are slow to bar an equitable action to enjoin infringement of a patent, they will do so without hesitation whenever the facts warrant. It is clear that an accounting should be denied. I believe, however, the withholding of an accounting would not do full justice to the defendant. The withholding of an injunction is also necessary to protect extensive business and capital investment of defendant built up with the sense of security induced during a period of over seven years of inaction by plaintiff with knowledge on plaintiff's part of defendant's infringing acts. Plaintiff has not met the burden which the law respecting laches imposed upon it.

The defense of laches must be sustained.