**SKIL CORPORATION, Plaintiff-Appellant,**

v.

**CUTLER–HAMMER, INC., Defendant-Appellee.**

**No. 17160.**

United States Court of Appeals Seventh Circuit.

June 12, 1969.

Rehearing Denied July 14, 1969.

Clarence J. Fleming, Fred S. Lockwood, Thomas A. Reynolds, Jr., Chicago, Ill., for appellant, James L. McManus, Chicago, Ill., of counsel.

Albert H. Pendleton, P. Phillips Connor, Gregory B. Beggs, Chicago, Ill., for appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a patent infringement suit involving plaintiff's Gawron Patent No. 3,209,228 (228). This patent relates to an electrical control system for small portable electric tools, such as electric drills.

Gawron, a graduate electrical engineer, spent two years investigating various means for achieving speed control over motors in portable tools. Gawron conceived his invention in April 1962 and in the fall of that year, constructed a tool which embodied a speed control system as shown in the patent.

The Gawron system is comprised of a combination of elements, including a silicon controlled rectifier (SCR) circuit in series with a universal or series motor in a portable electric tool, such as a drill, wherein the speed of the tool motor is controlled by the operator's finger on the tool trigger.

The principal components of the circuit are a silicon controlled rectifier, a capacitor, a diode, a fixed resistor, and a variable resistor. Another important element in the combination is a mechanical connection directly linking the drill trigger to the moveable element of the variable resistor; the tool trigger is also directly connected to a shunt or by-pass switch.

Defendant manufactures various electrical switch gear including trigger operated speed control switch units, which are the devices which plaintiff complains infringes its Patent No. 228. Such switch units are designed for inclusion in electrical hand drills made by various drill manufacturing companies including the Singer Company and McGraw-Edison Company. The Singer Company and its customer, Sears, Roebuck & Company (Sears) acknowledged the validity of the Gawron patent by entering a consent decree.

This suit was, at one time, consolidated with 65–C–1925, Skil Corporation v. McGraw-Edison Company and Cutler-Hammer, Inc. However, McGraw-Edison also has entered into a consent decree.

In its answer in the instant case, Cutler-Hammer denied infringement of the Gawron patent although at the trial, defendant admitted copying from a switch unit used by Skil and which Skil claims is covered by the patent in suit. Defendant asked a declaratory judgment that the patent in suit is invalid and not infringed.

On the basis of some exparte patent office proceedings which occurred after the patent in suit was issued, the District Court held that the statutory presumption of validity attending the Gawron patent had been destroyed. The Court then found the patent invalid for obviousness on the prior art which was the same as and cumulative of the prior art which had been considered by the Patent Office.

The application for the Gawron patent was filed September 28, 1962. The examiner considered Gemmill Patent No. 2,609,525 (525) which was called to his attention by Gawron's attorney. The Gemmill patent had been available to the public since 1952 and was issued prior to the development of silicon controlled rectifiers.

The District Court's decision is based upon the Matthews' application which was filed March 26, 1964, which was nearly a year and a half after the Gawron application had been filed.

In an amendment dated June 17, 1965, Matthews, desiring to have the Patent Office declare an interference, submitted claims 9 through 12 which are identical with claims 1 through 4 of plaintiff's Gawron patent. The Office action referred to by the District Court was that the examiner of the Matthews' application who was not the same examiner who considered the Gawron application, rejected claims 9 through 12 as "unpatentable to applicants over Slater in view of Gemmill." Thus, the second examiner made reference to two patents which had been considered by the examiner of the Gawron application. No interfer-

ence was ever declared, and the Matthews' application was abandoned.

■ The District Court in its opinion stated—"This Court must conclude, however, that the later examination of the Matthews et al. application involved a more thorough consideration of this prior art than did the examination of the Gawron application. Moreover, the Patent Office reversed its own prior opinion with regard to the patentability of the claims of Gawron by its action with respect to the copied claims. Under these circumstances, the basis for the presumption of validity is lacking." It is our view and we hold that the District Court was in error in this respect.

In the early case of McCormick Harvesting Machine Co. v. C. Aultman & Co., 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875, the United States Supreme Court pointed out that the only authority competent to set a patent aside, or to annul it, or to correct it for any reason, is vested in the courts of the United States. The Court stated at page 611, 18 S.Ct. at 445—"In the case under consideration the examiner acted upon the application as if it were a new proceeding, * * * but his action in rejecting some of the claims which had been repeated from the original patent did not affect that patent. * * * His opinion thereon was but his personal opinion, and, however persuasive it might be, did not oust the jurisdiction of any court to which the owner might apply for an adjudication of his rights, and as the examiner had no authority to affect the claims of the original patent, no appeal was necessary from his decision. * * * [t]o attempt to cancel a patent upon an application for reissue when the first patent is considered invalid by the examiner would be to deprive the applicant of his property without due process of law, and would be in fact an invasion of the judicial branch of the government by the executive."

The trial judge relied on Minnesota Mining & Mfg. Co. v. Coe, 79 U.S.App. D.C. 186, 145 F.2d 25 (1944), but that case did not involve an issued patent but rather the application of one Jewett who was appealing the refusal of the Patent Office to grant him certain claims. The validity of the Veazy patent was not there involved.

35 U.S.C. § 282 provides that a patent shall be presumed valid and that the burden of establishing invalidity shall rest on the party asserting it. Therefore, the Gawron patent was presumptively valid on September 28, 1965, the date it was issued. This presumption also was in effect on September 9, 1966, the date of the rejection of claims in the Matthews' application.

We know of no authority in the statutes or in court decisions to support the trial court's removal of the presumption of validity of the Gawron patent under the facts presented here. We hold that the presumption of validity of the Gawron patent was not destroyed.

We further hold that the Patent Office did not reverse itself as to the validity of the Gawron patent.

There seems to be little dispute that drills with the Gawron speed controlled system have a decided advantage over prior art drills which had feedback circuits and knob controls. In fact, the trial court recognized "* * * that the Gawron drill has advantages over prior art drills."

The Gawron drill has enjoyed great commercial success. It has been the subject of licenses and consent decrees. Two former defendants in this case are now licensees. For the period to and including the third quarter of 1967, sales of these drills have exceeded $10,000,000.

■ The principal remaining question is—Was the trial court correct in holding the Gawron patent (228) invalid for obviousness under 35 U.S.C. § 103? In determining this question, we consider whether the claimed invention in Gawron was obvious at the time it was made.

We must consider the state of the art as it existed on September 28, 1962, the Gawron filing date. The Matthews' examiner viewed the Gawron claims as

they existed on March 26, 1964 which was the Matthews' filing date. The Gawron examiner viewed the Gawron claims in the light of the prior art as it existed September 28, 1962. This difference of about a year and a half is significant because of the then rapidly advancing art of silicon controlled rectifiers.

At the time the Gawron claims were examined, Gutzwiller Patent No. 3,222,-583 had not issued and was, therefore, not available for reference. Likewise, the two publications cited in the Matthews' application were not published early enough to be references against Gawron.

At the time Gawron made his invention, others engaged in the art of providing SCR circuits as speed controls for portable electric drills had used the more complicated and more expensive feedback type of SCR circuit. One skilled in the art would likely have concluded that the more simple non-feedback SCR circuits would not be suitable for use in portable electric drills which have series motors with drooping speed-torque characteristics under changing load conditions.

In instances where a feedback type of silicon controlled rectifier circuit had been used in a drill, the circuit was controlled by a separate knob or dial remote from the trigger. No one had suggested that the tool trigger could be used to control the feedback SCR circuit.

Gawron disregarded the fact that previously in each use of a feedback SCR circuit a dial or knob had been used to set a pre-selected speed and the tool was then energized by the trigger for operating at the speed which had been thus selected. Gawron provided that his circuit be controlled by the tool trigger which was always under the finger of the operator of the drill.

On the question of obviousness, the trial judge relied principally on the Slater patent, No. 3,103,618, and the General Electric paper authorized by Gutzwiller. Each of these references was before

the Patent Office when the Gawron patent was issued.

█ It is well settled that the presumption of validity is stronger when, as here, the most pertinent prior art patents are considered by the Patent Office. Leach v. Rockwood & Co., 404 F. 2d 652 (7 Cir., 1968).

The silicon controlled rectifier circuit produces separate pulses or bursts of current which are conducted to the tool motor. These pulses may be varied by adjusting a variable resistor. As the drill trigger is squeezed, the speed of the drill motor is increased in a smooth and continuous manner from the lowest speed to almost the top speed of the motor. When the trigger is fully released, the motor is de-energized, but when the trigger is squeezed to its fullest extent, the by-pass or shunt switch is brought into operation causing the motor to be run at full speed directly from the alternating current lines.

In United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, a companion case to Graham v. John Deere & Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, and which is relied on by defendants, the Supreme Court found that at the time *Adams* perfected his invention, noted experts expressed disbelief in it. So too did Cutler-Hammer's engineer Brown with reference to the patent in suit.

█ We have heretofore noted that such scepticism is an indication of non-obviousness. Ekco Products Co., Inc. v. Chicago Metallic Mfg. Co., 321 F.2d 550 (7 Cir., 1963).

█ In no instance in the prior art had a non-feedback circuit ever been used successfully with reference to a motor-operated drill. One skilled in the art would very likely have concluded that the desirable way to use a feedback type of SCR circuit was to preset a desired speed by a knob or dial and to use the trigger as an off-and-on switch.

The clear import of the General Electric publication offered by Gutzwiller is that a SCR circuit with inherent or elec-

trical feedback is necessary to control a series motor in a device which is subjected to a changing load condition such as is made in a power drill. In fact, Gutzwiller stated the non-feedback circuit is "handicapped" by the well known drooping characteristics of a series motor.

It seems obvious to us that a person skilled in the art in 1962 would have been likely to have concluded that the more simple non-feedback SCR circuits were not suitable for use in portable electric drills which have series motors and with drooping speed-torque characteristics under changing load conditions.

It is our conclusion and we so hold that the teachings of the patent in suit were not obvious at the time the application for the patent in suit was filed.

An additional issue raised by defendant is "Whether, although not passed upon by the District Court, the subject matter of the patent in suit was developed and used by others prior to the patentee's alleged invention."

██ Defendant relies upon the activities of Matthews et al. Plaintiff points out that any such prior experiments were of a secret nature and were not available to the public, and that the patent is not thereby invalidated, citing Illinois Tool Works, Inc. v. Continental Can Company, 273 F. Supp. 94, affirmed 397 F.2d 517 (7 Cir., 1968).

It was established that whatever was constructed by Matthews et al. in 1960 and 1961 was concealed and then abandoned. It was not until late 1963 that Matthews attempted to sell a commercial speed controlled unit. We hold the patent in suit was not invalidated by the activities of Matthews, et al.

The last issue also not passed on by the District Court is the claim of defendant that the suit fails to set forth the best mode contemplated by the patentee in carrying out the subject matter of his patent. Plaintiff relies on 35 U.S.C. § 112. Suffice it to say, we disagree and think such contention is without merit.

The District Court did not pass on the question of infringement although the evidence on this point seems to clearly answer this question. We think the trial court, on remand, should pass on the question of infringement.

We hold the claims of the patent in suit are valid. We also decide the judgment of the District Court herein must be and is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CUMMINGS, Circuit Judge (dissenting in part).

Although concurring in the first part of the Court's opinion, I am persuaded that the patent is invalid for obviousness for reasons given by the district court. See 159 U.S.P.Q. 423, 427–431 (N.D.Ill. 1968). The district judge's careful analysis of the prior art available at the time of the Gawron application does not appear to depend in any respect upon his conclusion concerning the presumption of validity to which the patent would ordinarily be entitled. He found a "clear lack of invention," and also determined that advancement in the rectifier field, including a drop in price in silicon controlled rectifier circuits, rather than any discovery on Gawron's part was ultimately responsible for the development of the inexpensive and practicable portable tool shown in the Gawron patent. He concluded that plaintiff's large advertising expenditures and the lack of industry-wide statistics neutralized the significance of commercial success as a secondary index of obviousness.

I would adopt the district court's opinion with respect to obviousness and would affirm on that ground.