**SKIL CORPORATION,**
Plaintiff-Appellee,

v.

**LUCERNE PRODUCTS, INC.,**
Defendant-Appellant.

No. 80–3170.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1981.

Decided July 7, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 31, 1982.

Certiorari Denied Nov. 8, 1982.
See 103 S.Ct. 347.

Richard J. Egan, Baldwin, Egan, Walling & Fetzner, Cleveland, Ohio, for defendant-appellant.

Marc L. Swartzbaugh, Jones, Day, Reavis & Pogue, Clarence J. Fleming, McDougal, Hersch & Scott, Cleveland, Ohio, for plaintiff-appellee.

Before MERRITT and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

This is an appeal from a decision of the district court holding U.S. Patent No. 3,209,228 valid. The report of Magistrate Streepy and the opinion of District Judge Lambros are reported at 489 F.Supp. 1129 (N.D.Ohio 1980). We affirm.

## I.

### Background

For an extensive discussion of the facts of the case, reference is made to the magistrate's report. A summary of the pertinent facts will be stated in this opinion to the extent necessary to dispose of the issues presented on appeal.

Skil Corporation (Skil) is the owner of U.S. Patent No. 3,209,228 in the name of Alex F. Gawron (the Gawron patent). The

Gawron patent claims a combination of elements which include (1) an electric motor, (2) a silicon controlled rectifier (SCR) speed control circuit, (3) a trigger, and (4) human feedback. These elements combine to produce an operator-controlled trigger to regulate the operating speed of a portable power tool, such as an electric drill.

The Gawron patent application was submitted on September 28, 1962. In early 1964, Lucerne Products, Inc. (Lucerne) exhibited a speed control device before Skil officials which, like the speed control device claimed in the Gawron patent application, employed an SCR speed control circuit and a trigger operated through human feedback. The Lucerne device also had an additional desirable feature in that it was available in a "retrofit package" which would permit the speed control device to be inserted in the handle of a portable tool. Although the Gawron patent application had noted that the speed control device claimed therein could be "mounted in a handle," the location or packaging of the speed control device was not an element of the combination patent, and the Gawron patent prototype did not have the speed control elements housed exclusively in the handle of the tool.

Skil and Lucerne entered into negotiations, and on March 2, 1964, Skil ordered 100,000 of the Lucerne speed control switches at $3.00 a unit. Since Lucerne lacked production facilities, Skil assisted Lucerne in their creation and advised Lucerne to make certain refinements in the speed control device.

On March 3, 1964, Skil amended its initial application by cancelling certain claims and adding two new claims. In the supporting remarks, Skil noted that the Gawron device "is small and compact and readily lends itself to mounting within the handle of the tool without causing heating of the handle." Skil further asserted that the Gawron device provided for the first time an extremely compact, trigger-operated control system which could be mounted in the handle of a power tool. On November 24, 1964, the patent examiner denied the amended claims of the Gawron patent application.

On March 26, 1964, Lucerne filed a patent application covering its speed control device. Like the Gawron patent application, none of the claims in the Lucerne patent application included the placing of the speed control circuitry into the handle of a power tool as an element of the claimed invention.

On March 9, 1965, Skil and Lucerne entered into an agreement which provided that counsel for the parties would make a mutual disclosure of their respective patent applications, determine whether there was common subject matter, and, if so, compare proofs as to the date of inventorship. In the event they could not agree as to which party was entitled to the claims, the Patent Office would be requested to set up an interference to determine the same. In the event a patent was issued to either Skil or Lucerne, the party owning the patent would grant to the other party a nonexclusive license to make the control switch units for a royalty of three percent, or lower in case another license was granted for a lower royalty.

Lucerne subsequently did little to establish prior invention of the speed control device. At the March 9, 1965 signing of the agreement between Skil and Lucerne, the parties disclosed their respective patent applications to one another. On June 30, 1965, Lucerne exhibited its first two trigger speed control device prototypes. Counsel for Lucerne represented that the two prototypes were made before the relevant Gawron invention dates, but no supporting documentation was produced by Lucerne at that time. During the period between early 1966 and August 1977, Lucerne, for the first time, showed Skil a document in an effort to establish priority of invention. Two additional documents were disclosed to Skil in August of 1967. These documents, however, were inconclusive. The district court found that the Lucerne device was not invented prior to the September 28, 1962 application date of the Gawron patent, and this finding is not challenged on appeal.

On March 16, 1965, Skil representatives met with the patent examiner concerning the Gawron patent application. They demonstrated the Gawron invention by operating a variable speed control drill which incorporated the invention. The invention was embodied in a Lucerne speed control device which Skil had purchased from Lucerne.

Six days after the demonstration before the patent examiner, on March 25, 1965, another amendment to the Gawron application was filed. In the remarks accompanying the amendment, the March 16, 1965 demonstration was acknowledged and briefly described. There is no evidence that Skil, at this or any other time, informed the Patent Office of the Lucerne speed control device and its use in the demonstration drill. Nor is there any evidence that Skil pointed out the retrofit feature of the Lucerne device or otherwise contended that the invention included the retrofit feature as an element. The remarks also sought to distinguish the amended Gawron claims from certain prior art patents. These patents included U.S. Patent No. 2,609,525 (the Gemill patent), which teaches that the speed of an electric appliance can be varied by using a trigger in combination with a circuit which features a rheostat. The patent examiner was shown a copy of the patents and Skil stated that, "None of these patents in any way relate to a trigger speed control using a silicon rectifier circuit, and in particular the type of circuit which permits the operator of the tool to achieve feedback by finger control." On April 6, 1965, the patent examiner reconsidered the Gawron application and allowed it. The Gawron patent was issued on September 28, 1965.

Lucerne sought to amend its application on June 15, 1965, by adding claims which duplicated the claims allowed in the Gawron application. On May 19, 1966, the patent examiner rejected all claims of the Lucerne application. Lucerne filed an amendment on August 4, 1966, and requested that an interference be declared between its amended claims and the Gawron patent. In response, the patent examiner rejected all

Lucerne claims on September 9, 1966, and sometime thereafter the application was abandoned.

## II.

### Fraud on the Patent Office

Lucerne contends that Skil committed fraud on the Patent Office in the prosecution of the Gawron patent application by failing to inform the Patent Office of (1) the Lucerne speed control device, (2) the agreement between Skil and Lucerne to determine first inventorship, (3) the fact that Gawron's prototype did not have the "retrofit" feature, and (4) the use of the Lucerne speed control device to demonstrate the Gawron invention to the patent examiner.

An initial difficulty with Lucerne's position is its claim that this appeal presents only questions of law and involves no issues of disputed fact. In this Circuit a party asserting a fraud defense in patent litigation is required to prove "specific intent," that is, intent to defraud, by clear, unequivocal and convincing evidence. *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.,* 562 F.2d 365, 371 (6th Cir. 1977); *Kolene Corp. v. Motor City Metal Treating, Inc.,* 440 F.2d 77, 83 (6th Cir.), *cert. denied,* 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971). Further, the specific intent must be associated with a material matter. *Schnadig Corp. v. Gaines Mfg. Co.,* 494 F.2d 383, 392 (6th Cir. 1974). Whether clear, unequivocal and convincing evidence of fraud was in the record before the district court is a question of fact, not of law, and thus the determination of the district court that there was no fraud may be reversed only if clearly erroneous. *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc., supra* at 371; *Schnadig Corp. v. Gaines Mfg. Co., supra* at 392; *Becton Dickinson & Co. v. Robert B. Scherer Corp.,* 211 F.2d 835, 838 (6th Cir. 1954). Lucerne's contention that, upon the facts found, the district court was required to conclude that Skil committed fraud as a matter of law must be rejected.

■ The district court found that Lucerne had established neither the specific intent nor the materiality elements of the fraud defense. This finding was not clearly erroneous. A finding of fraud on the Patent Office depends on a subsidiary finding that the omission or misrepresentation was material. *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1145 (3rd Cir. 1980). Where, as here, the claim is one of fraudulent nondisclosure, it must appear that the Patent Office would have rejected the patent application but for the nondisclosure. *Deere & Co. v. Hesston Corp.*, 593 F.2d 956, 960 (10th Cir.) *cert. denied*, 444 U.S. 838, 100 S.Ct. 75, 62 L.Ed.2d 49 (1979); *Norton v. Curtiss*, 433 F.2d 779, 795 (C.C.P. A.1970). Since Lucerne does not challenge the district court's finding that its device was not prior art, its insistence that Skil was duty bound to bring the device to the attention of the Patent Office is inexplicable. Obviously, the existence of a similar device invented at a later date would not have caused the Patent Office to reject Skil's patent application, and therefore was not material.

Since the existence of the Lucerne speed control device was not material to the patentability of the Gawron invention, it follows that the agreement between Skil and Lucerne to determine first inventorship and the use of the Lucerne speed control device to demonstrate the Gawron invention was also immaterial. Similarly, the fact that the Gawron prototype did not have a retrofit feature is utterly immaterial. An inventor need not make an actual reduction to practice; the filing of an application is a constructive reduction to practice which completes the invention.[1] *The Telephone Cases*, 126 U.S. 1, 535–36, 8 S.Ct. 778, 782–83, 31 L.Ed. 863 (1888); *Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co.*, 272 F. 386, 391 (6th Cir. 1921).

On appeal, Lucerne seeks to avoid the consequences of the finding that its device was not prior art by contending that Skil was required to disclose the Lucerne device merely because Skil could not be sure whether the Lucerne device was in fact invented after the Skil device. Lucerne relies on the "uncompromising duty" of candor discussed in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). In *Precision*, however, the nondisclosure condemned by the Supreme Court was highly material: the party seeking to enforce the patent knew that the patent had been acquired by means of perjury regarding the date of invention. Similarly, in every case in which this Court has applied the *Precision doctrine*, we have recognized that the lack of candor or inequitable conduct must relate to a material matter. *See, e.g., Buzzelli v. Minnesota Mining & Mfg. Co.*, 521 F.2d 1162, 1166 (6th Cir. 1975); *Schnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 392–93 (6th Cir. 1974); *Charles Pfizer & Co. v. FTC*, 401 F.2d 574, 580, 582 (6th Cir. 1968), *cert. denied*, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969). Thus, *Precision* does not impose upon the patent applicant a duty to disclose immaterial facts. *Cf. Carter-Wallace, Inc. v. Davis Edwards Pharmaceutical Corp.*, 443 F.2d 867, 881 (2d Cir. 1971) (*Precision doctrine* would not require disclosure of certain references if references not found to be prior art). Lucerne's reliance on *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 428 F.2d 555 (5th Cir.), *cert. denied*, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970), is also misplaced. There the court's discussion of Beckman's duty to disclose the existence of Chemtronic's device is premised on a finding that Chemtronic's invention was prior art. Lucerne, however, has acquiesced in a finding that its invention was *not* prior art. Thus, the cases relied on by Lucerne do not permit it to evade the materiality requirement.

■ Apart from the claims relating to the nondisclosure of the Lucerne device,

---

1. Although neither the Skil nor the Lucerne applications claimed the retrofit feature as an element of the claimed invention, the original Skil application, filed well before Skil learned of the Lucerne device, clearly stated that the Gawron invention could be mounted "in the handle" of a power tool.

Lucerne further contends that Skil fraudulently misrepresented the Gemill patent as not relating to a trigger speed control permitting operator feedback by finger control. However, Lucerne has misread Skil's statements. Although the Gemill patent does teach the elements of speed control, human feedback, and the use of a trigger, its circuitry features a rheostat rather than an SCR, and it is on this basis that Skil distinguished the Gemill patent. Thus Skil did not misrepresent the Gemill patent, fraudulently or otherwise.

## III.

### Obviousness

The district court adopted the magistrate's conclusion that the Gawron invention was nonobvious. On appeal, Lucerne again insists that the Gawron patent is directed to obvious subject matter and invalid under 35 U.S.C. § 103.

The Gawron patent has been held nonobvious in *Skil Corp. v. Cutler-Hammer, Inc.*, 412 F.2d 821 (7th Cir.), *cert. dismissed*, 396 U.S. 951, 90 S.Ct. 394, 24 L.Ed.2d 257 (1969). In that litigation, the district court had found the Gawron patent invalid for obviousness, relying upon the rejection by the Patent Office of identical claims contained in the Lucerne application. The Seventh Circuit reversed, holding that a rejection of the Lucerne application did not destroy the presumption of validity of the Gawron patent. The difference of about a year and a half between the Gawron application and the later Lucerne application was considered significant by the court because the art of silicon-controlled rectifiers was rapidly advancing during that interval. 412 F.2d at 824.

■ The normal statutory presumption of validity accorded to a patent by 35 U.S.C. § 282 is greatly enhanced when it has been held valid in a prior decision. *American Home Products Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1125 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974). A prior adjudication of validity will be followed unless the court is convinced of a very palpable error in law or fact. *Id.; Cold Metal Process Co. v. Republic Steel Corp.*, 233 F.2d 828, 837 (6th Cir.), *cert. denied*, 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86 (1956).[2]

■ Lucerne relies upon the rejection by the Canadian Patent Office of the corresponding Gawron application on the grounds of obviousness.[3] The magistrate, however, found that no evidence was introduced showing that in 1965 Canadian patent law was substantially identical to United States patent law or that the facts and circumstances surrounding the two applications were substantially identical. Furthermore, we note that the three year interval between the American and Canadian filing dates[4] is twice as long as the period considered significant by the Seventh Circuit in holding that rejection of the Lucerne application did not detract from the validity of the Gawron patent. Therefore, we conclude that the magistrate and the district court did not err in concluding that the proceedings in Skil's Canadian application did not overcome the enhanced presumption of validity attaching to the Gawron patent.

The judgment of the district court is AFFIRMED.

2. Lucerne contends that the precedential effect of the Seventh Circuit decision has been nullified by the supplemental record developed in the course of this litigation. However, the eight items of new evidence upon which Lucerne relies pertain to the alleged fraud practiced by Skil, an allegation we have rejected. These items of evidence do not undermine the Seventh Circuit decision on the issue of obviousness.

3. Patent proceedings in other countries are not controlling, in part because the standards of patentability vary widely from country to country. *Timely Products Corp. v. Arron*, 523 F.2d 288, 295 (2d Cir. 1975). But in light of the emphasis Lucerne places upon the Canadian patent proceedings, it is interesting to note that Skil did succeed in obtaining counterpart Gawron patents in eleven other foreign countries.

4. As mentioned, the United States patent application was submitted on September 28, 1962. The Canadian patent application was filed on September 21, 1965.