Dyk, Circuit Judge
with whom Prost, Chief Judge, and Hughes, Circuit Judge, join, concurring in the denial of initial hearing en banc.
We concur in the court’s denial of the petition for initial hearing en banc. The petition raises the same constitutional challenge to the inter partes review provisions of the America Invents Act that the court rejected in MCM Portfolio LLC v. Hewlett-Packard Co., 812 F.3d 1284 (Fed. Cir. 2015), cert. denied — U.S. —, 137 S.Ct. 292, 196 L.Ed.2d 212 (2016). MCM was correctly decided, and there is no need to restate MCM’s reasoning here. We write solely to address three points raised by today’s dissents.
First, MCM is neither “inconsistent” nor “irreconcilable” with the court’s decision in Patlex Corp. v. Mossinghoff, 758 F.2d 594 (Fed. Cir. 1985). Op. 1314 (Reyna, J., dissenting). In Patlex, the court upheld the constitutionality of ex parte reexaminations conducted by the PTO. In doing so, the court expressly affirmed the power of an Article I tribunal to adjudicate, in the first instance, the validity of an issued patent. See Patlex, 758 F.2d at 604. MCM faithfully followed the reasoning of Patlex to reach the same conclusion with respect to inter partes review.
Second, Patlex and MCM did not differ in their interpretation of McCormick Harvesting Machine Co. v. Aultman, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898). On its face, the decision in McCormick rested on the lack of statutory authority: “Our conclusion upon the whole case is that, upon the issue of the original patent, the patent office had no power to revoke, cancel, or annul it. It had lost jurisdiction over it, and did not regain such jurisdiction by the application for a reissue.” Id. at 612, 18 S.Ct. 443.
Both Patlex and MCM distinguished McCormick as resting on a lack of statutory authority, statutory authority which was later conferred by a series of statutes culminating in ex parte reexamination and, later, inter partes review. As explained by the court in Patlex:
We do not read McCormick Harvesting as forbidding Congress to authorize reexamination to correct governmental mistakes, even against the will of the patent owner. A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes. This Congressional purpose is presumptively correct, and we find that it carries no insult to the Seventh Amendment and Article III.
758 F.2d at 604. MCM adopted this exact reasoning in upholding the constitutionality of inter partes review. See MCM, 812 F.3d at 1291 (quoting Patlex, 758 F.2d at 604).
*1312 Third, contrary to the dissents, there is no inconsistency in concluding that patent rights constitute property and that the. source of that property right is a public right conferred by federal statute. See Op, 1312-13 (O’Malley, J., dissenting); Op. 1323-25 (Reyna, J. dissenting); The , Supreme Court has repeatedly recognized that patent rights are public rights flowing from congressional legislation. In a decision pre-dating McCormick, the Court observed that:
The [patent] monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes.
Gayler v. Wilder, 51 U.S. (10 How.) 477, 494, 13 L.Ed. 504 (1850). The recognition of patent rights as grounded in statutory law remains to this day. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 229 n.6, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) (“Patent rights exist only by virtue of statute.”).
The Supreme Court has also repeatedly made clear that such public rights may be adjudicated in the first instance by an administrative agency. For example, most recently in Stern v. Marshall, 564 U.S. 462, 491, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), the Court concluded that the public rights doctrine extends to “cases in, which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory' objective within the agency’s authority.”[1] There is no dispute that the issue of patent validity “derives from a federal regulatory scheme” and is “integrally related to particular federal government action.” Stern, 564 U.S. at 490-91, 131 S.Ct. 2594.

. See also Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 54, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 856, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69-70, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); Crowell v. Benson, 285 U.S. 22, 50, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1855).