George R. COGAR, Appellant,

v.

William E. SCHUYLER, Jr., Commissioner of Patents, and SPERRY RAND CORPORATION.

No. 71–1713.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1971.

Decided March 28, 1972.

Rehearing Denied April 25, 1972.

Leonard H. Becker, Washington, D. C., with whom Kenneth C. Bass, III, Washington, D. C., was on the brief, for appellant.

Jere W. Sears, Associate Sol., U. S. Patent Office, with whom S. Wm. Cochran, Sol., U. S. Patent Office, was on the brief, for appellee Schuyler.

Alan E. J. Branigan, Washington, D. C., for appellee Sperry Rand Corp.

Before BAZELON, Chief Judge, Mc-GOWAN, Circuit Judge, and A. SHER-MAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

CHRISTENSEN, District Judge:

In this appeal we are asked to determine whether an inventor can prevent the issuance of a patent to himself; more specifically whether a protesting inventor, fearing injury to reputation from publication of a patent thought to be anticipated by the prior art, is entitled to an oral hearing in the Patent Office to contest patentability on an application filed by a proprietary claimant as agent for the inventor under 35 U.S.C. § 118 (1970).[1] Concluding that this novel problem falls somewhere between a case of "giant conceit", as the trial court described it, and one warranting due process vindication, as contended by appellant,[2] we affirm the judgment be-low dismissing the complaint. Yet we have found the questions raised to be substantial, to have warranted the careful consideration given to them and to require something more than perfunctory treatment here.

Appellant is a well-known technical expert and inventor. By his employment contract with appellee, Sperry Rand Corporation, he was required to assign rights in his inventions to Sperry. While in such employment he developed the "Address Counter Stage Circuitry" now in controversy. Sperry asked appellant to sign an application for a patent covering this circuit. Appellant, without questioning that his contract otherwise would apply, wrote Sperry that he declined to do so because the invention was obvious to any skilled electronic circuit designer and not sufficiently inventive to qualify for a patent. Pursuant to Section 118, *supra,* and Patent Office Rules of Practice 47(b)[3] to the same effect, Sperry itself applied for a patent on February 28, 1966, in appellant's name.[4] Appellant was advised of that fact by a letter from the Patent Office; and on May 31, 1966, he submitted his objections to the Patent Office to the effect that he did not believe the invention to be patentable. The Patent Examiner assigned to consider

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. "Whenever an inventor refuses to execute an application for patent, or cannot be found or reached after diligent effort, a person to whom the inventor has assigned or agreed in writing to assign the invention or who otherwise shows sufficient proprietary interest in the matter justifying such action, may make application for patent on behalf of and as agent for the inventor on proof of the pertinent facts and a showing that such action is necessary to preserve the rights of the parties or to prevent irreparable damage; and the Commissioner may grant a patent to such inventor upon such notice to him as the Commissioner deems sufficient, and on compliance with such regulations as he prescribes."

2. Appellant stated in his application for reconsideration of the denial of his petition for rejection of the patent application or for a full hearing: "Because of the damage to my personal reputation as an outstanding inventor, along with the injury to the public from the grant of an individual patent, I determined to contest the Sperry application. . . . As I put it, the Patent Office cannot against my wishes and without reason, permanently associate my name as inventor on an invalid patent . . . without affording me all rights of due process."

3. 37 C.F.R. § 1.47(b) (1971).

4. The Patent Office interpreted appellant's employment contract with Sperry as an agreement to assign future rights in appellant's inventions to Sperry, rather than a straight assignment, and hence determined that the patent must issue to appellant alone, not to Sperry or to appellant as Sperry's assignor.

the application rejected it on June 25, 1968, relying in part on appellant's submission.[5] On September 9, 1968, Sperry Rand filed a response to that rejection, followed by appellant's protest on June 17, 1969, against the issuance of the patent. On July 23, 1969, the Examiner again rejected the patent claim as being obvious under 35 U.S.C. § 103.

Subsequently, Sperry Rand obtained a personal interview with the Examiner and again amended its application. In the summer of 1970, Sperry Rand and appellant were notified that the Patent Examiner had tentatively decided to allow the amended application. On July 21, 1970, appellant filed a petition to the Commissioner citing Rule 182 of the Patent Office Rules of Practice [6] seeking to prevent issuance of the patent or, alternatively, to defer issuance until appellant had been given an opportunity to present his objections. On September 17, 1970, appellant submitted technical objections, along with a letter from counsel specifically requesting an interview with the Examiner. Detailed petitions asking for rejection of Sperry's application or for a full hearing followed on November 21, 1970, and January 27, 1971.

In a letter dated March 16, 1971, the Deputy Commissioner of Patents advised appellant that "the inventor has been accorded full consideration of his contentions as to non-patentability" and that his correspondence would be entered into the official file. Appellant's request for an interview was denied. On April 20, 1971, appellant requested reconsideration of the Deputy Commissioner's decision; and on May 24, 1971, the Deputy Commissioner ruled that appellant's position had been made of record in the application file, that the contentions advanced by him had been given careful consideration but that those contentions were not persuasive to reverse the March 16 decision.

Appellant then commenced this action and in connection therewith sought a temporary restraining order and preliminary injunction. The district court, being of the view that appellant had failed to show that he would eventually prevail on the merits of his cause or that he would suffer irreparable injury, denied interim relief. Appellant then appealed from such denial and moved here for summary reversal and an injunction pending appeal. This court, to afford opportunity more fully to consider the matter, temporarily restrained the issuance of the patent and later remanded the case to the district court, continuing the temporary stay of issuance of the patent "until disposition by the District Court on the merits". Upon remand, that court in reliance upon Rule 12(b) (6) Fed.R.Civ.P. granted appellees' motion to dismiss for failure to state a claim upon which relief could be granted. The present appeal was taken from that dismissal. Subsequently, this court denied appellant's further application for a stay pending appeal.[7]

---

5. The Examiner, in a letter to UNIVAC Engineering Center, stated the following reasons for rejecting the application:
   "Claims 1 to 8 are rejected as obvious under 35 U.S.C. § 103. The structure as recited in the claims is merely a matter of design expedient. By the inventor's own admission, in a letter to Mr. Cleaver dated February 25, 1966, and made of record by the inventor (paper #4), he does not consider this to be a 'patentable invention'. The inventor, Mr. Cogar, further states that 'ON-ON flip flops (more commonly referred to as complimentary (sic) flip-flops), bi-directional current gates, bi-directional shift registers including direct indicator drive are well known and widely used in the art.'"

6. Rule 182 states:
   "All cases not specifically provided for in the regulations of this part will be decided in accordance with the merits of each case by or under the authority of the Commissioner, and such decision will be communicated to the interested parties in writing." (37 C.F.R. § 1.182 (1971).)

7. It was reported during oral argument here that the patent in question had been issued. We decline to accept the suggestions made by appellees at the oral argument that this appeal thereby was ren-

The trial court granted appellees' motion to dismiss on the ground that the complaint failed to state a claim against appellees upon which relief could be granted.[8] As against such a motion the court must take as true all material facts well pleaded in the complaint with reasonable inferences in favor of the movant, but conclusions of law and other broad conclusionary allegations unwarranted or negated by the facts pleaded may be disregarded.[9] Allegations that a patent for the circuit in question would be invalid, that applicant was wrongfully refused a hearing, and that his due process rights were violated are conclusionary in nature and did not by themselves save the complaint. Appellant's assertion that he "is as well situated as any member of the public to protect the public interest in contesting issuance of the patent" (as a "private attorney general") is immaterial to the problem before us. That appellant is an outstanding inventor must be conceded, and it was and is to be assumed as alleged that if a patent issues the appellant will become publicly known as the inventor and by reason of the publication of his name will suffer injury to his personal reputation. Whether such injury would be irreparable, as claimed, is conclusionary and dependent upon related legal problems. Factually it seems problematical that any substantial damage of the nature apprehended by appellant would be suffered in view of the disclosure in the files of the Patent Office of appellant's protests and the narrow basis of appellant's fears in relation to the inferences that might be drawn from the face of a patent bearing his name. The line between inventions which might and might not be obvious to persons skilled in the art is often shadowy; and judicial notice may be taken that various patents issued to inventors whose fame still survives have been determined upon court test to be invalid in whole or in part. Yet we shall assume that the granting and publication of the patent would injure appellant's reputation to an appreciable degree and, on the basis of appellant's allegations, that there is substantial question relating to the obviousness of such a claimed invention.[10]

Appellant bases his claimed right to a hearing on two contentions: first, the Patent Commissioner in violation of his statutory duty has wrongfully refused to grant a hearing to appellant; and, second, appellant was entitled to a hearing by virtue of the Due Process clause of the Fifth Amendment.

Appellant argues that the Patent Commissioner has abused his authority in failing to grant appellant a hearing on the patent's validity. He relies on sections 6 and 103 of Title 35 U.S.C. (1970) in support of his argument. Section 6 states that "[t]he Commissioner. . . shall superintend or perform all duties required by law respecting the granting and issuing of patents", and also provides that "[h]e may . . . estab-

dered moot. Technical arguments were advanced to this effect, which in other context might have merit. But we do not think it persuasive here that such pendente lite action, the taking and timing of which were controlled by one party, should divert us from the exercise of the appellate jurisdiction clearly vested with reference to the constitutional claim.

8. Fed.R.Civ.P. 12(b) (6).

9. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646 (1938); Ammerman v. Miller, 139 U.S.App.D.C. 188, 432 F.2d 621 (1970); Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252, cert. denied, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed. 2d 60 (1960); United Transport Serv. v. National Mediation Board, 85 U.S.App. D.C. 352, 179 F.2d 446 (1949).

10. See Higley v. Brenner, 128 U.S.App. D.C. 290, 387 F.2d 855 (1967), observing that what the prior art is and what the claimed invention is are questions of fact but whether the standard of obviousness applied to those facts is correct is a question of law; and Stieg v. Commissioner of Patents, 122 U.S.App.D.C. 361, 353 F.2d 899 (1965), indicating that a finding of obviousness is a mixed finding of law and fact.

lish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office." Because 35 U.S.C. § 103 [11] precludes the issuance of patents with "obvious" subject matter, appellant's argument continues, the Commissioner neglected his statutory duty in refusing to provide a full hearing when the obviousness of the patent was challenged by the inventor.

There is no express statutory requirement or authorization for an oral hearing at the request of the inventor in the issuance of a Rule 47(b) patent. Section 118 of Title 35 U.S.C. authorizes the Patent Commissioner to accept applications for patents from non-inventors to whom "the inventor has assigned or agreed in writing to assign the invention or who otherwise shows sufficient proprietary interest in the matter justifying such action." Patent Office Rule 47(b) specifies procedure to be utilized when a non-inventor application is filed.[12] The Manual of Patent Examining Procedure states that the inventor may "protest his designation as an inventor and offer evidence to support his

position", but may not "institute inter partes proceedings." [13]

Thus, neither the statute, the rule, nor the Manual expressly authorizes an oral hearing or interview for an aggrieved inventor. On the contrary, reference in the Manual to the position of one protesting his own inventorship suggests an intention inconsistent with inter-party proceedings in the present context. By contrast, where Congress intended that both notice and an opportunity for a hearing be given, it has clearly expressed its intentions.[14] Congressional intent has been discussed by this court in a case somewhat analogous to the present controversy. In LaRue v. Udall, 116 U.S. App.D.C. 396, 324 F.2d 428, cert. denied, 376 U.S. 907, 84 S.Ct. 660, 11 L.Ed.2d 606 (1963), appellants had unsuccessfully protested an exchange of public grazing land by the Department of Interior under the Taylor Grazing Act. The opinion noted that "arguments pro and con on appellants' protest, including affidavits and memoranda of law, were considered by the lower echelons of the Department and finally the matter reached the Secretary of Interior," who

11. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

12. ". . . Such application must be accompanied by proof of the pertinent facts and a showing that such action is necessary to preserve the rights of the parties or to prevent irreparable damage, and must state the last known address of the inventor. The assignment, written agreement to assign or other evidence of proprietary interest, or a verified copy thereof, must be filed in the Patent Office. The Office shall forward notice of the filing of the application to the Inventor at the address stated in the application. Should such notice be returned to the Office undelivered, or should the address of

the inventor be unknown, notice of the filing of the application shall be published in the Official Gazette. The inventor may subsequently join in the application on filing an oath or declaration of the character required by § 1.65. A patent may be granted to the inventor upon a showing satisfactory to the Commissioner." 37 C.F.R. § 1.47(b) (1971).

13. "The 'inventor designee' may protest his designation as an inventor and offer evidence to support his position. The Office in such case, although it will allow the 'inventor designee' to make his position of record in the file of the application and will grant him access to the application, will not institute inter partes proceedings in the Rule 47 application. The rights of said inventor are protected by the fact that in an application filed under Rule 47(b) and 35 U.S.C. § 118 the patent must issue to the inventor and in an application filed under Rule 47(a) and 35 U.S.C. § 118 the inventor has the rights of a joint application. In re Application of Hough, et al., 703 O.G. 200."

14. *See, e. g.,* 35 U.S.C. § 32 (1970).

"approved the exchange." With regard to appellants' contention that a "full and fair hearing" had not been accorded them, the court stated:

"As appellants were heard at length on their protest against the proposed exchange, it is apparent their real complaint is that no formal evidentiary hearing was held. We find nothing in the Taylor Grazing Act which requires a hearing on such a protest. Section 8, dealing with exchanges, merely requires publication of notice of a contemplated exchange. Where Congress intended a hearing to be held, it provided therefor in express terms, as it did in § 1 of the Taylor Grazing Act. [43 U.S.C. § 315.] *Id.* at 400."

Although personal interviews with applicants are not infrequently granted at the Commissioner's discretion, the general practice covered by Patent Office Rule 2 is to the contrary.[15]

█ Appellant finally claimed before the district court the following rights on the facts alleged, although all of them were not specifically asserted in the first instances: (1) a written decision by the Examiner setting forth the grounds for rejecting appellant's arguments; (2) an opportunity to rebut the Examiner's position; (3) an opportunity to interview the Examiner after having received full knowledge of the basis for his decision;[16] (4) an opportunity to appeal from the Examiner's decision, with all of the rights applicable thereto; and (5) an order prohibiting the Patent Office from distributing to any person copies of the patent. In contending that these rights should be recognized on his behalf since most of them were available to Sperry Rand, appellant ignores the fact that an applicant, as such, has certain express statutory rights without provision for their extension to others. For example, when the Examiner initially rejected the claims, he was obligated to state "reasons for such rejection" and Sperry was entitled to have the application re-examined "with or without amendment" as provided by 35 U.S.C. § 132 (1970). Moreover, had the Examiner persisted in his rejections, Sperry had a right of appeal to the board of Patent Appeals under 35 U.S.C. § 134, and subsequently could seek judicial review if dissatisfied. 35 U.S.C. §§ 141, 145 (1970). The Patent Office regularly sells and distributes copies of all issued patents as a service to the interested public regardless of patent validity. That service is expressly provided for by 35 U.S.C. § 41(a) par. 9 (1970), which makes no distinction between patents which after issuance may be adjudged valid or invalid. The Patent Office must be free to cite and provide copies of even invalid patents, as evidence of prior art, in examining future applications of others under 35 U.S.C. § 131. The patent law recognizes that patent applications for assigned inventions may involve disagreement between the inventor and the assignee by permitting the latter alone to apply in the event of the inventor's refusal. This is not a case where the validity or scope of the

---

15. "All business with the Patent Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent Office is unnecessary. The action of the Patent Office will be based exclusively on the written record in the Office. . . ." 37 C.F.R. § 1.2 (1971).

16. Appellant's complaint in the Patent Office and initially to the court below was directed specifically to denial of a personal interview or hearing. In his "Supplemental Petition (to the Patent Office) for Rejection of Patent Application or for a Full Hearing to be Accorded the 'Inventor'", he referred to other claimed rights. In the proceeding below appellant's main contention again was that he should be afforded an opportunity for a hearing. In view of this contention, upon the trial court's suggestion that the problem might be amicably solved through a voluntary interview with the Examiner, the appellee consented and the appellant's counsel tentatively indicated agreement, but thereafter conditioned such agreement upon recognition by the Patent Office of the other claimed rights to which reference is above made. No agreement could be reached on that basis.

assignment is questioned. The statutory right of the appellee to prosecute the patent application by virtue of the assignment is not, and cannot be, challenged. The statute does not create or imply a non-right or counter-right on the part of the inventor. We can find no merit in appellant's contention that refusal of the Commissioner to accede to the demands of appellant constituted a violation of any duty imposed by statute or rule.

However, statutory enactments and administrative rules must yield to or be supplemented by constitutional mandates. Appellant's second contention, accordingly, is that the Due Process clause of the Constitution requires the Commissioner to meet appellant's demands in spite of any legislative or administrative void which might otherwise exist.

Congress has been specifically empowered to enact legislation pertaining to patents.[17] Appellant's alternative argument is that it has failed to provide procedural safeguards within its statutory scheme; that this failure exists from denial by statute, rule, or practice of an opportunity for an inventor in appellant's position to meet with the Examiner and present contentions concerning alleged patent invalidity; and that through such failure appellant has been denied "due process of law" contrary to the Fifth Amendment.

There is no dispute that appellant had numerous opportunities to present his views to the Commissioner. On May 31, 1966, appellant submitted his first objections to the Patent Office; on June 17, 1969, appellant filed a second protest; on July 21, 1970, appellant filed a petition seeking to prevent issuance of the patent after it had been tentatively approved; on September 17, 1970, appellant submitted a lengthy affidavit detailing the technical reasons why the patent should not be issued; detailed peti-

tions asking for rejection of Sperry's patent followed on November 21, 1970, and January 27, 1971; finally, on April 20, 1971, appellant requested that the Deputy Commissioner reconsider his decision to grant the patent. It is our conclusion that in view of these and similar opportunities to submit written objections and comments, procedural due process did not compel the Patent Office to grant appellant also a personal interview with the Examiner.

WJR, The Goodwill Station, Inc. v. Federal Comm. Com'n., 84 U.S.App.D.C. 1, 174 F.2d 226 (1948), rev'd. Federal Comm. Com'n. v. WJR, The Goodwill Station, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 on remand, 85 U.S.App.D.C. 392, 178 F.2d 720 (1949), is instructive. The FCC granted permission to Coastal Plains Broadcasting for construction and operation of a radio station to serve parts of North Carolina. Pursuant to 47 U.S.C. § 405 of the Communications Act, WJR filed a petition for reconsideration of the decision and also requested that a hearing be held in which WJR could participate. Its petition alleged that the new station would interfere with its broadcast signal and included an engineering affidavit in support of this allegation. Coastal Plains opposed the petition on grounds that even if the allegations were assumed true, the interference which resulted did not violate the Commission's rules and Standards of Good Engineering Practice—in effect, a motion to dismiss. By its decision and order the Commission denied without a hearing WJR's petition for reconsideration. This court characterized one of the central issues as follows: "[I]s WJR entitled to a hearing before the Commission as to the sufficiency of the allegations of its petition, assuming their truth, to show indirect modification of its license by the granting of the Coastal Plains application." Id. 174 F.2d at 231. In answer to this question the majority

17. "Congress shall have Power . . . to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S.Const. Art. I, § 8.

**754**

opinion [18] held that WJR was entitled to a hearing.[19]

The Supreme Court reversed, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949), holding that "due process of law" as guaranteed by the Fifth Amendment does not necessarily require federal administrative tribunals to grant oral argument to one claiming to be adversely affected by their determination of questions of law.

The Supreme Court said:

"[T]he right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. Equally certainly it has left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings, as well as in their conjunction." *Id.* 337 U.S. at 276, 69 S.Ct. at 1103.

To require a hearing on all questions of law, the Court indicated, would have serious effects on administrative and judicial tribunals.[20]

■ Both in the circumstances of *WJR* and in the present context Congress had provided for oral arguments or hearings only in limited instances.

"Congress, we think, has committed to the Commission's discretion . . . the questions whether and under what circumstances it will allow or require oral argument, except where the Act itself expressly requires it." *Id.,* 337 U.S. at 281, 69 S.Ct. at 1106. "[I]t is hardly to be taken that Congress intended the 'reasonable opportunity to show cause' always to include opportunity for oral argument." *Id.,* 337 U.S. at 282, 69 S.Ct. at 1106. Neither the petitioner in *WJR* nor appellant here claimed that the hearing would allow presentation of information not already presented. "Respondent does not contend that it was denied any opportunity to present for the Commission's consideration any matter of fact or law in connection with its application or that the Commission has not given all matters submitted by it due and full consideration." *Id.,* 337 U.S. at 284, 69 S.Ct. at 1107; *see also* Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 233 F.2d 148, 164 (2d Cir. 1956). Indeed, it appears that at least the first refusal to grant the patent was influenced by appellant's written opposition. Although appellant asserts that the *ex parte* interview with Sperry resulted in the issuance of the patent, there is no indication that the patent would not have been issued without the interview in view of the amendments to the claim subsequently made. The argument here has not ranged so wide as to suggest that the granting of a personal

---

18. The case was first argued before a three-judge panel, Chief Judge Groner and Judges Clark and Prettyman. By direction of the court it was reargued before Judges Stephens, Edgerton, Clark, Miller, and Prettyman. The decision was rendered on an opinion by Judge Stephens, in which Judges Clark and Miller concurred. Judge Prettyman filed a dissenting opinion in which Judge Edgerton joined.

19. The court stated: "It is the view of the majority that due process of law, as guaranteed by the Fifth Amendment, requires a hearing, including an opportunity to make oral argument, on every question of law raised before a judicial or quasi-judicial tribunal, including questions

raised by demurrer or as if on demurrer. . . ." *Id.* 174 F.2d at 233.

20. "We do not stop to consider the effects of such a ruling, if accepted, upon the work of the vast and varied administrative as well as judicial tribunals of the federal system and the equally numerous and diversified interests affected by their functioning; or indeed upon the many and different types of administrative and judicial procedures which Congress has provided for dealing adjudicatively with such interests. It is enough to say that due process of law, as conceived by the Fifth Amendment, has never been cast in so rigid and all-inclusive confinement." 337 U.S. at 275, 69 S.Ct. at 1103.

interview to the applicant and not to the inventor was an invidious discrimination per se; but we have considered and rejected this circumstance as an indication of the failure of due process. While an interview or hearing may prove helpful in the determination of a question, it is not the function of a court to compel interviews unless there exists some obligation to accord them.[21]

■ Mindful of the admonition of the Supreme Court that necessity of oral arguments must be decided on a case by case basis, *WJR*, 337 U.S. at 276, 69 S.Ct. 1097, 93 L.Ed. 1353, it is our opinion that this case is not one in which a personal interview with the Examiner or other oral hearing was necessary as an element of due process. Appellant has sought throughout the five years of this controversy to persuade the Patent Office that his invention was "obvious" and therefore not patentable under federal law. "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966). This type of inquiry involves technical and largely documented consideration as to which personal interviews could be of minimal assistance to an examiner.[22]

This contrast of factual situations can be seen by comparing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), with Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In *Kelly* the problem concerned initial termination, after *ex parte* investigation, of welfare benefits without a prior hearing. The Court held that the rudimentary aspects of due process require "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." 397 U.S. at 268, 90 S.Ct. at 1020. In *Perales,* however, involving a federal statutory claim of disability benefits turning primarily upon medical evidence, the confrontation and cross-examination held required by due process of law in *Kelly* was not deemed essential.[23]

The instant case involves a question of patentability in technical aspects analogous to the problem of applicant's health in *Perales.* Both cases involved evaluation of data; neither case involved the veracity of the parties where an examination of the witness by the trier of fact was crucial. As the court said,

21. "No matter how desirable a hearing may be in the premises, or how greatly a hearing might facilitate sound disposition of a controversy, the courts cannot compel it, unless there be some requirement for it other than the court's own view. The courts cannot require an administrative agency to do that which is merely patently desirable. They can require only that the agency comply with the Constitution, the statutes, and its legal obligations." WJR, The Goodwill Station, Inc. v. Federal Comm. Com'n., 84 U.S.App.D.C. 1, 19, 174 F.2d 226, 244 (1948) (dissenting opinion).

22. Justice Frankfurter has observed: "An opportunity to be heard may not seem vital when an issue relates only to technical questions susceptible of demonstrable proof on which evidence is not likely to be overlooked and argument on the meaning and worth of conflicting and cloudy data not apt to be helpful." Joint Anti-Fascist Refugee Committee v. Mc-Grath, 341 U.S. 123, 171, 71 S.Ct. 624, 648, 95 L.Ed. 817 (1951) (concurring opinion).

23. The Court in distinguishing *Kelly* stated: "We are not concerned with termination of disability benefits once granted. Neither are we concerned with a change of status without notice. Notice was given to claimant Perales. The physicians' reports were on file and available for inspection by the claimant and his counsel. And the authors of those reports were known and were subject to subpoena and to the very cross-examination that the claimant asserts he has not enjoyed. Further, the spectre of questionable credibility and veracity is not present; there is professional disagreement with the medical conclusions, to be sure, but there is no attack here upon the doctors' credibility or veracity. *Kelly* affords little comfort to the claimant." 402 U.S. at 407, 91 S.Ct. at 1430.

"The matter comes down to the question of the procedure's integrity and fundamental fairness." 402 U.S. at 410, 91 S. Ct. at 1431.

We think that appellant was given ample opportunity to present his claims before the Patent Office even though he was not afforded a personal interview. "The ultimate requirement is a procedure that permits a meaningful opportunity to test and offer facts, present perspective, and invoke official discretion." Blackwell College of Business v. United States Att'y Gen., 147 U.S.App. D.C. 85, 454 F.2d 928 (decided Sept. 10, 1971). The procedure followed by the Patent Office allows to reluctant inventors in appellant's position fair opportunity to present their opposition to the issuance of a patent.

The motion to dismiss was properly granted by the district court. Assuming the truth of the facts well pleaded in appellant's complaint neither the statutory duties of the Patent Office nor the Due Process clause compelled the Commissioner of Patents to grant appellant a personal hearing or interview or the other procedures now demanded.

The judgment appealed from is affirmed.

Wilkey, Circuit Judge, concurred and filed opinion; MacKinnon, Circuit Judge, filed opinion on denial of sua sponte suggestion for rehearing by court en banc.