**DIGITAL EQUIPMENT CORPORATION,
Plaintiff,**

v.

**Lutrelle F. PARKER, Commissioner of Patents and Trademarks, and Rene D. Tegtmeyer, Assistant Commissioner for Patents, Defendants,**

and

**Computer Operations, Inc.,
Defendant-Intervenor.**

Civ. A. No. 78–1842–Z.

United States District Court,
D. Massachusetts.

April 2, 1980.

Martin J. O'Donnell, Cesari & McKenna, Boston, Mass., for plaintiff; Donald R. Dunner, Finnegan, Henderson, Farabow & Garrett, Washington, D. C., of counsel.

Charles K. Mone, Asst. U. S. Atty., Boston, Mass., for defendants.

Stephen B. Deutsch, Boston, Mass., William L. Mentlik, Westfield, N. J., Foley, Hoag & Eliot, Boston, Mass., for defendant-intervenor; Richard I. Samuel, Lerner, David, Littenberg & Samuel, Westfield, N. J., of counsel.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is an action to set aside a 1978 decision by the U. S. Patent and Trademark

Office (USPTO) which arises in the course of continuing patent infringement proceedings involving plaintiff Digital Equipment Corporation ("Digital," "DEC"), defendant-intervenor Computer Operations, Inc. ("COI"), a competitor, and United States Patent No. 3,387,293, obtained by Digital in 1968 for a computer data storage and retrieval system. In the course of a 1974 antitrust action by COI [1], Digital sought to bolster its claim to the patented system by applying to the USPTO for the correction of asserted technical defects in its patent and for reissue of the patent as corrected. Finding deceptive intention in Digital's failure to include required information in both the applications for issue and reissue, the USPTO "struck" the reissue application from the file pursuant to a USPTO regulation ("USPTO Rule 56") which permits summary dismissal of an application upon clear and convincing evidence of fraud. Digital now seeks to set aside the use of that summary procedure in this case. This claim is grounded on 5 U.S.C. § 706(2), a provision of the Administrative Procedure Act, and is before the Court on cross motions for summary judgment.

## FACTS

The facts of the case are set forth in affidavits, pleadings, memoranda and USPTO documents, and are essentially undisputed. The subject of the action is Digital's Patent No. 3,387,293 ("the '293 patent") for "Bidirectional Retrieval of Magnetically Recorded Data", the basis for a data retrieval system which Digital came to market under the names "DEC tape" and "Microtape" (the "system"). Development of the Microtape system was largely the work of employee Thomas C. Stockebrand ("Stockebrand") who joined Digital in 1962. Stockebrand had previously worked at MIT Lincoln Laboratories in Bedford, Massachusetts, where he participated in the development of a forerunner of DEC tape called "LINC tape", a system technologically similar to DEC tape. At Digital, Stockebrand worked

in 1963 and 1964 to perfect the DEC tape system and to service a lease and purchase agreement which Digital entered into with KIE Data, Incorporated in May 1963. Although initial contracts to market the system in 1963 suffered disappointments in the system's performance and lapsed deadlines in the delivery of services, during that period Digital stepped up its efforts to market the system with additional publicity and personnel. Simultaneously, Stockebrand and other Digital employees were in the process of preparing an application for the patent, and in 1964 Stockebrand executed the oaths required for submission of the patent application.

On November 6, 1964, Stockebrand assigned the rights to what would become the '293 patent to Digital. Three days later Stockebrand filed the application with the USPTO. On June 4, 1968 the USPTO issued the patent to Stockebrand, and the patent became the property of the assignee, Digital.

Some five years after the '293 patent issued, defendant-intervenor COI began marketing a data retrieval system which had the option of reading and writing on DEC tape. Following an exchange of correspondence between Digital and COI on the subject of possible infringement, COI initiated Civil Action No. 74 CIV 980, (E.D. N.Y.) on July 2, 1974 asserting antitrust claims, and seeking a declaratory judgment to establish the invalidity and non-infringement of the '293 patent.

In the course of the District Court proceeding, and over COI's objection, Digital applied to the USPTO for correction and reissue of the '293 patent pursuant to 35 U.S.C. § 251, a provision which enables the Commissioner of Patents and Trademarks ("Commissioner") to correct and reissue outstanding patents when erroneous specifications, drawings or claims in the original application through no deceptive intention of the holder, render the patent inoperative

---

1. *Computer Operations, Inc. v. Digital Equipment Corporation,* Civil Action No. 74 CIV 980 (E.D.N.Y., filed July 2, 1974).

or invalid.[2] Digital's reissue application contained the requisite assertion of good faith and was submitted on the grounds that "certain of the [original] claims may be subject to a construction which covers more than the applicant is claiming as his invention". The reissue application not only listed the clerical errors in the text of the original application, but, additionally identified and distinguished Lincoln Laboratory's "LINC tape" and another Lincoln Laboratory system, "TX–2", which had not been identified by names in the original application, and acknowledged the 1963 sales and lease contracts, information arguably required, but absent from the original application.

In response to the reissue application, COI petitioned the USPTO to "strike" the application pursuant to 37 CFR § 1.56(d) (1979) (USPTO Rule 56), and on November 3, 1976 the USPTO issued to Digital an "Order to Show Cause" why COI's petition should not be granted. On November 22, 1976, COI submitted comments on the order. On March 2, 1977 Digital submitted comments and affidavits by counsel and Digital personnel.

On April 4, 1978, the USPTO issued its "Decision Striking Application Under 37 CFR § 1.56", which contained a lengthy discussion of the reissue application and the submissions by Digital and COI. The USPTO determined that with Digital's knowledge, Stockebrand's initial application withheld certain facts, and swore to the lack of knowledge of facts about the invention, the disclosure of which were required by law for the issuance of a patent: specifically, facts concerning sales of the system more than one year prior to the filing of the application, and the "prior art" most relevant to the invention. Considering his failure to disclose material misrepresentations and attributing them to both Stockebrand and Digital, the assignee, the USPTO set forth ten independent grounds to strike the application for reissue; nine grounds for fraud in the procurement of the original patent and one ground for fraud in the application for reissue.[3] It is that decision

---

**2.** REISSUE OF DEFECTIVE PATENTS.

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

The Commissioner may issue several reissued patents for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued patents.

The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent. 35 U.S.C. § 251.

**3.** A primary focus of plaintiff's argument is a change in USPTO Rule 56 which became effective just prior to the April 1978 decision. 42 F.R. 5593, January 28, 1977. In 1977, 37 CFR § 1.56 was expanded to include the language underlined below:

(d) An application shall be stricken from the files if it is established by clear and convincing evidence that any fraud was practiced or attempted on the Office in connection with it or that there was any violation of the duty of disclosure through bad faith or gross negligence.

Plaintiff argues that by expanding grounds to strike an application to include "gross negligence" as well as fraud, the USPTO regulation strayed beyond the requirement in 35 U.S.C. § 251 that "deceptive intention" alone may thwart an application for reissue. Whether or not the claim that 42 F.R. 5593, January 28, 1977 impermissibly exceeds the limit set by 35 U.S.C. § 251 is not before me in this instance, because the USPTO specifically found "fraud" within the terms of the text of 37 CFR § 1.56 prior to amendment:

After reviewing COI's COMMENTS and APPLICANT'S RESPONSE, including the AFFIDAVITS, it has been found that the evidence is "clear and convincing" that "fraud" was "practiced or attempted . . .." The "fraud" referred to herein is "fraud" within

of the USPTO which Digital seeks to set aside.

## THE ISSUES

Digital attacks the April 4, 1978 decision on both procedural and substantive grounds. It argues that the decision to "strike the application from the file" pursuant to USPTO Rule 56, 37 CFR § 1.56(d) (1979), enlisted a summary procedural device which USPTO regulations make available solely for the processing of initial applications for patents. USPTO Rule 56 effectively permits the Commissioner to "dismiss" an application without a hearing upon a finding of fraud in the application. The consequence of using the summary procedure in reissue procedure, Digital contends, is to foreclose a statutory procedure which includes *de novo* review, and which Digital argues The Patent Act, 35 U.S.C. §§ 1, *et seq.* affords to every applicant for reissue.

Digital contends that this statutory violation has Constitutional dimension because the decision, based exclusively on petitions, comments and affidavits, amounted to a finding of fraud without benefit of live testimony and cross-examination of witnesses, and thus deprived the holder of the patent of liberty without due process of law. Finally, Digital argues that even if the invocation of summary procedures was not illegal, and a hearing *de novo* is, accordingly, not required, the USPTO decision was arbitrary and capricious and an abuse of discretion such that this Court, pursuant to 5 U.S.C. § 706(2), should set the decision aside and order a fresh hearing, including the taking of oral testimony.

Defendants contend that the April 4, 1978 decision by the Commissioner fully comports with statutory requirements and valid regulations. The Commissioner argues that because 35 U.S.C. § 251 is limited by its terms to the consideration of applications made without deceptive intention, the finding of fraud in any event pre-empts the USPTO's authority to reject or even to con-

the meaning of 37 CFR 1.56 before and after the revision effective March 1, 1977. Deci-

sider the application, and leaves no choice but to strike the application. Finally defendants assert that the decision is supported by sufficient evidence on ten independent grounds, any one of which would preclude a finding that the decision represented an abuse of discretion.

### *"Rule 56" Claim*

The Commissioner of Patents and Trademarks is empowered by 35 U.S.C. § 131 to issue, and by 35 U.S.C. § 251 to "reissue", patents upon proper application of an inventor or other qualified party. See 35 U.S.C. §§ 111, *et seq.*, particularly 35 U.S.C. § 251. The Patent Act, 35 U.S.C. §§ 1, *et seq.*, sets forth procedures for the consideration of applications for the issue and reissue of patents, and empowers the Commissioner, "subject to the approval of the Secretary of Commerce, [to] establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office." 35 U.S.C. § 6. Those regulations are found at 37 CFR §§ 1.1 *et seq.* (1979).

The subject of plaintiff's attack is the Commissioner's decision to "strike" a reissue application pursuant to a USPTO regulation, USPTO Rule 56, 37 CFR § 1.56(d), 42 F.R. 5593 (Jan. 28, 1977), a summary procedure most commonly used in dismissing initial patent applications for fraud in the application. Plaintiff argues that the use of Rule 56 in *reissue* proceedings violates not only the regulations themselves, but also the statutory scheme of the Patent Act, and the Due Process Clause.

■ As to the first claim, the regulations are clear:

An original claim, if re-presented in the reissue application, is subject to reexamination, and the entire application will be examined in the same manner as original applications, subject to the rules relating thereto, . . . 37 CFR § 1.176 (1979)

In this instance, plaintiff's application for reissue recited as its premise that: "[t]he original patent is considered to be partly

sion Striking Application Under 37 CFR § 1.56, at 20.

inoperative . . .", and but for two paragraphs of "clerical corrections", and the requisite oath of good faith in allegations in the application, the six-page application dealt exclusively with addenda to the discussions of "prior art" and "previous sales" in the original application. 37 CFR § 1.176 (1979) leaves no doubt that the assertion of those claims when raised in a reissue application, is subject to the procedural rules controlling consideration of original applications. The invocation of 37 CFR § 1.56(d), with respect to this application is thus clearly contemplated and surely permitted by USPTO regulations.

*Statutory Claim*

Plaintiff maintains that the use of 37 CFR § 1.56(d) to "strike" a reissue application in any event bypasses a statutory reissue procedure set forth in 35 U.S.C. §§ 134 and 251, which insures an applicant a right of appeal from an application decision with a hearing *de novo.* Plaintiff argues that the Commissioner cannot "strike" but must "reject" a reissue application, and by rejecting, thus enable appeal under 35 U.S.C. § 134. In support, plaintiff cites one instance in which the Commissioner, and another in which the USPTO Board of Appeals, employed that procedure and *rejected* reissue claims deemed to be outside USPTO reissue authority as set forth in 35 U.S.C. § 251. *Application of Wittry,* 489 F.2d 1299 (Cust. & Pat.App.1974); *Ex parte Sabins,* 141 U.S.P.Q. 395, 399 (PTO Bd. App. 1963) ("failure to comply with [35 U.S.C. § 251] requirements is a basis for rejection . . ."). Plaintiff concludes that upon proper application for reissue, rejection is the Commissioner's only permissible alternative to reissue of a patent.

■ Plaintiff's claim requires a review of the statutory role which reissue plays in USPTO proceedings. "Reissue" does not renew or extend the term of an outstanding patent. It "repairs" an outstanding patent at the holder's request. When a patent holder suggests that the outstanding patent is because of error inoperative or invalid, and when there is no "deceptive intention" in the application for reissue, the Commis-

sioner is empowered to correct the volunteered defects in the patent and, in effect, to reinstate the patent as corrected "for the unexpired part of the term of the original patent." 35 U.S.C. § 251. The Patent Act, 35 U.S.C. §§ 1, *et seq.,* creates no authority for the Commissioner to set aside or annul the outstanding patent. *McCormick Harvesting Mach. Co. v. C. Aultman & Co.,* 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898). See *Iowa State Univ. Research Found. v. Sperry Rand Corp.,* 444 F.2d 406 (4th Cir. 1971). See also 37 CFR § 1.178 (1979) ("If a reissue be refused, the original patent will be returned to the applicant upon his request.") Denial of an application for reissue has no effect on the status of the underlying patent, which continues in force. *Id.* "Reissue" thus involves an application procedure much like that of the original "issue" procedure, which can only confer a right and cannot detract from an existing right. With the exception of a difference in the identity of parties eligible to make application for reissue, a difference not relevant in this case, the Patent Act provides that "[t]he provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent . . .". 35 U.S.C. § 251.

Plaintiff, however, argues that in order to give effect to special procedures for reissue set forth in 35 U.S.C. § 251, the Commissioner can only properly refuse to reissue a completed application by rejecting it, and that the Commissioner accordingly lacks authority in 35 U.S.C. § 6 to make a regulation to permit "striking" applications for reissue (i. e. 37 CFR § 1.176 (1979)) because such attempt at regulation is "inconsistent with law" and thus exceeds authority to make regulations conferred by 35 U.S.C. § 6.

■ The argument is unavailing. Regulations promulgated by the Commissioner are entitled to a presumption of validity, *Merchants Nat. Bank v. United States,* 583 F.2d 19 (1st Cir. 1978), and in order to sustain a challenge to the validity of a regulation promulgated under specific legislative authority, plaintiff bears a burden of

establishing that the regulation violates the law. *Merchants Nat. Bank v. United States, supra; Forester v. Consumer Product Safety Commission,* 182 U.S.App.D.C. 153, 559 F.2d 774 (D.C.Cir. 1977); *New York Foreign Freight Forwarders & Brokers Ass'n. v. Federal Maritime Commission,* 337 F.2d 289, (2d Cir.), *cert. denied,* 380 U.S. 910, 85 S.Ct. 1893, 13 L.Ed.2d 797 (1964). In this case, plaintiff must show that the use of USPTO Rule 56 in a reissue application is forbidden by The Patent Act, specifically by 35 U.S.C. §§ 251–252, where the Commissioner's power to reissue is created.

Title 35, U.S.C. nowhere enacts a body of reissue application procedures. The only direct statutory guidance for reissue procedures is language that "[t]he provisions of [35 U.S.C.] relating to applications for patent shall be applicable to applications for reissue of a patent", 35 U.S.C. § 251. Statutory provisions for initial application for issuance are more specific. 35 U.S.C. § 131 discusses "application" for issuance, and 35 U.S.C. § 132 refers to "rejection" of an application for issue, "objection" by the Commissioner, and notice of "requirement" by the Commissioner of additional information. The last two actions are not dispositive. The applicant may continue prosecution of the application, and if the application is rejected twice thereafter, 35 U.S.C. § 134 entitles the applicant to appeal. Thus, an initial application may lead to "issuance" or "rejection" or to a provisional negative decision, "together with such information and references as may be useful in judging of the propriety of continuing the prosecution of [the] application . .". 35 U.S.C. § 132.

■ In view of the application procedures set forth in The Patent Act, and the provision in the Act that the same procedures apply to reissue applications, 35 U.S.C. § 251, plaintiff's claim that a reissue application is amenable only to issuance or to an appealable rejection is without foundation. The Patent Act makes clear provi-

sion for nondispositive decisions by the Commissioner on applications properly submitted. Indeed, the Court of Customs and Patent Appeals has specifically held USPTO Rule 56 to be consistent with the statutory scheme for treating applications for the issue of patents. *Norton v. Curtiss,* 433 F.2d 779, 791, 57 CCPA 1384 (1970). That the same procedure may be applied to "reissue" proceedings, another exercise of the Commissioner's authority created by The Patent Act, is unmistakably set forth in the Act, 35 U.S.C. § 251, and the validity of its application in such cases is, thus, beyond doubt. USPTO Rule 56 is not inconsistent with law when applied to reissue applications, and plaintiff's claim that it exceeds statutory authority is thus rejected.

*Due Process Claim*

Plaintiff's due process argument rests on the charge that this administrative finding of fraud, made without a hearing, and based on affidavits and memoranda alone, provided insufficient procedural safeguards where the corporation's "liberty interest" in its reputation was implicated; and that the decision should accordingly be vacated.

■ The Due Process Clause has never been held to require that patent application procedures must provide a hearing or an opportunity to present oral testimony. The Patent Act includes a number of provisions which, like 35 U.S.C. § 251, empower the Commissioner to take steps in the application procedure which may impugn an applicant,[4] but the Act makes no provision for a hearing in those cases. The constitutional requirement of due process of law, under these circumstances, in which no vested property right is affected, does not require a hearing in patent application procedures. *Cogar v. Schuyler,* 464 F.2d 747 (D.C.Cir. 1972).

■ Plaintiff correctly observes that under certain circumstances, the courts have recognized a "liberty interest" in protecting one's reputation in the face of de-

---

4. See, *e. g.,* 35 U.S.C. § 255, requiring "good faith" in making application; 35 U.S.C. § 116, forbidding "deceptive intention" with respect to misjoinder.

famatory or stigmatizing government action. See *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). But that protection of reputation is limited to cases in which the government action affects a vested property right. The Court of Appeals for the First Circuit recently identified and endorsed the "stigma-plus" test to determine when alleged government defamation implicates a claimant's right to liberty:

> To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law. *Rodriquez de Quinonez v. Perez*, 596 F.2d 486, 489 (1st Cir. 1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979), quoting *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338, 341 (5th Cir. 1978), and *Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977).

Accordingly, plaintiff must show that the application for reissue of its patent represented a "right or status previously recognized under . . . law." *Rodriquez de Quinonez v. Perez, supra*. The foregoing discussion confirms that the denial of a reissue application does not detract from or interfere with a protected right in a patent. *McCormick Harvesting Mach. Co. v. C. Aultman & Co.*, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898). *Norton v. Curtiss*, 433 F.2d 779, 57 CCPA 1384 (1970). Plaintiff continued to hold the patent after the USPTO decision to strike the reissue application, and the status of the patent was precisely the same as it was before application was made. *Id.* See also 37 CFR § 1.178 (1979). In short, plaintiff had no property interest cognizable under the Due Process Clause which was "connected with" the finding of fraud. The only effect of the government action can be traced to the release and publication of the USPTO findings upon which the decision against reissue was based. While the published decision of April 1978, alone, was surely critical of plaintiff and, arguably, could be feared by plaintiff for its stigmatizing effect, see *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), the law is clear: "defamation by a government official, standing alone, does not work a deprivation of liberty protected by the fourteenth amendment", *Rodriquez de Quinonez v. Perez*, 596 F.2d 486, 489 (1st Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). *Paul v. Davis, supra*, 424 U.S. at 711, 96 S.Ct. at 1165. Thus no procedural safeguards are required to insure due process of law in the treatment of this plaintiff's reissue application.

It bears notice, however, that even if the liberty interests of individuals were in fact implicated, there is no reason to believe that the USPTO application procedures would not have comported fully with the due process requirements of the Fifth Amendment. Here plaintiff filed an application and supporting materials. Central to the application was the requirement that certain factual information in the knowledge of the applicant be disclosed, and that the applicant supply an oath that no such knowledge had been withheld. After plaintiff filed the application, defendant's objections were heard, were digested by the USPTO, and set forth in a USPTO "Order to Show Cause" which numbered and detailed possible deficiencies in the application—principally charges of failed disclosure—and invited the applicant's response. Plaintiff then voluntarily supplied a number of affidavits by employees and counsel to answer objections, and memoranda and comments on the various issues. On the basis of Digital's initial submissions, COI's response, the USPTO's production of an Order to Show Cause and Digital's affidavits and other replies, the USPTO rendered decision. Digital's sole objection is that the decision to strike was not supported by live testimony.

"Due process" requires that when government action implicates individual interests cognizable under the Fifth Amendment, the individuals interested must be given a meaningful hearing at a meaningful time. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62

(1965); See *Mathews v. Eldridge* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Government action must "[provide the] procedural protections [which] the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To ascertain what procedures are due, the court must take account of "the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews v. Eldridge, supra*, 424 U.S. at 335, 96 S.Ct. at 903.

■ Even if the plaintiff's interest in applying for the reissue of its patent were cognizable under the Fifth Amendment, the absence of an oral presentation in the procedures which led to this USPTO decision on the application is not constitutionally deficient. Defendants correctly observe that there are few, if any, genuine factual disputes between the parties on the subject of the reissue application. The USPTO decision treats only facts contained in the application and affidavits submitted on behalf of plaintiff. No affidavits of "adverse" parties were submitted. The parties argued, and the USPTO considered, the plausibility of Stockebrand's oaths and representations, and the USPTO weighed the effectiveness of various explanations for why certain information was absent from the original and reissue applications. It then struck the application on the ground that certain required information had been withheld, and that oaths to the contrary had been fraudulently made. In its decision, the USPTO rejected only explanations and conclusions of law: it did not resolve conflicting factual claims. The April 1978 decision determined, in most instances, that the *explanations* were inconsistent with the uncontested fact record, thus ineffective to support the conclusions stated by various employees. Because no adverse parties alleged facts and thus no opportunity to "confront" accusers was denied, and because the sole factual basis for the decision was plaintiff's own rendition of the facts, plaintiff's

contention rests solely on the belief that, if provided an opportunity to make oral presentations, the demeanor of Digital employees in reciting *explanations* contained in their affidavits would have overcome the finding of deceptive intent. In a sense, plaintiff's request is for nothing more than oral argument on its application, and there is no constitutional requirement that this application procedure accord the applicant that opportunity. See *Cogar v. Schuyler, supra.*

Plaintiff also argues that demeanor evidence is essential to ascertain the existence of fraud. Here, what the applicant knew and when he knew it are essential elements of the finding of fraud, and are a principal subject of affidavits and memoranda. To that extent, plaintiff's state of mind was an essential element of the evidence and finding. However, in light of the fact record, and the meaning of "fraud" within the scope of the Patent Act, the emphasis on demeanor evidence is misplaced.

■ In Patent Act application proceedings, the "fraud" which is prohibited is not measured by the same standards as common law fraud—so-called "technical fraud" which is itself an actionable wrong. Unlike technical fraud, fraud for which the Commissioner may strike an application need not satisfy all traditional common law fraud requirements. Instead, the inquiry is directed to

> the equities of the particular case [to] determine whether the conduct [in question]—which might have been admittedly less than fraudulent in the technical sense—was still so reprehensible as to justify the court's refusal to enforce the rights of the party guilty of such conduct. *Norton v. Curtiss*, 433 F.2d 779, 793, 57 CCPA 1384 (1970)

■ In the case of USPTO Rule 56, the evidence of fraud must be proved by "clear and convincing" evidence. 37 CFR § 1.56(d). But the proof of fraud looks to the conduct of the applicant and affiliates and to the factual record, and gauges the duty of an applicant by the "relationship of trust between the Patent Office and those wishing to avail themselves of governmen-

tal grants which the agency has been given authority to issue." *Norton v. Curtiss*, 433 F.2d *supra*, at 793, 57 CCPA 1384. In recognition both of the applicant's special duty to make full disclosure, and the "tremendous burden" on the USPTO in receiving and processing applications, *Norton v. Curtiss, supra*, 433 F.2d at 794, 57 CCPA 1384, when the facts warrant a finding that "misrepresentations were made in an atmosphere of gross negligence as to their truth", *id.*, at 796, 57 CCPA 1384, the Commissioner may properly strike an application. *Id.* Clearly, demeanor evidence is not required to make such a finding. Thus, where no vested property interest is implicated, no procedural safeguards are required by the Due Process Clause and plaintiff's constitutional claim fails. Further, the alleged deficiencies in this nonrequired hearing procedure are not of constitutional dimension even if a liberty interest had been threatened.

*Administrative Procedure Act Claim*

 ▮ Finally, plaintiff would set aside the April 1978 decision on the ground that the decision was an abuse of USPTO discretion and thus cannot stand. 5 U.S.C. § 706(2). To reach such a conclusion would require findings that not one of the ten grounds stated in the decision would support the determination of fraud. The evidentiary support for a number of the USPTO's findings and the detail with which the decision marshalls evidence from record, however, preclude such a conclusion. While much of the discussion in the decision ranges at length through the application history, and the significance of communications among Digital counsel and employees both before and after 1964, four grounds for the decision are particularly clear and I determine that each supports the determination of fraud:

1.  Ground I: That Stockebrand knew that the patented system was on sale more than one year prior to the time of application, in contradiction of his oath in the application.

Stockebrand's sworn oath of November 6, 1964 recites:

I do not know and do not believe that this invention was ever known or used before my invention or discovery thereof, or . . . on sale in the United States more than one year prior to this application . . .

The USPTO decision also excerpts plaintiff's response to the Order to Show Cause, at 33:

'prior to the filing of a declaratory judgment suit by COI against DEC,' applicant was 'unaware of *any* grounds constituting a statutory bar to the invention, including specifically any acts which would conceivably place the invention on sale.'

The decision then recites from plaintiff's documents the dates of four "Microtape" contracts between Digital and various concerns before the "one-year prior" deadline of November 1963, and Stockebrand's knowledge of the existence of contracts: (1) KIE Data, Incorporated on May 1963 for $73,200 in Microtape equipment, upon which Stockebrand's extensive labors are recounted in the record and of which in July 1963 "Stockebrand reported the system running satisfactorily"; (2) Atomic Energy Commission of Canada, Ltd. in June 1963; (3) Fort Meade; delivery due in August 1963; and (4) Massachusetts Institute of Technology, September 1963; the latter three contracts the subject of a memorandum which Stockebrand received in the course of the documented meetings among Digital employees engaged in the sales and servicing of Microtape accounts.

The decision then recounts Stockebrand's close involvement with the Microtape project prior to November 1963, particularly the system sold to KIE Data Incorporated. The decision recites Stockebrand's account of how the KIE Data system "broke", and how Stockebrand was held responsible, scolded and denied a salary increase as a result of the breakdown, and his delay in repairing the system.

Based on Stockebrand's own account of the KIE Data sale prior to November 1963, his detailed knowledge of the arrangement

and his recollection of the events during the very period in which the application for the patent was being prepared for submission, and based on the USPTO determination that Digital had not rebutted the prima facie case that Microtape was "on sale" before November 1963, the USPTO found clear and convincing evidence to reject the claim that Stockebrand did not know of any pre-November 1963 contracts when he signed the applicant's oath in November 1964.

2. Ground IV: That Stockebrand knew of pre-November 1963 sales of the system in contradiction of the April 1968 Supplemental Declaration.

On April 23, 1968 Stockebrand filed with the USPTO a supplemental declaration in which he affirmed his lack of knowledge of any "public use or . . . sale [of the system] in the United States . . . more than one year before the date of his application."

The USPTO found grounds to strike the application for the reasons cited in Ground I, which it found to be enhanced by evidence contained in plaintiff's submissions that both before and after the April 1968 declaration Stockebrand in fact remembered and knew of the pre-November 1963 contracts in which he had played an active role in servicing on behalf of Digital.

3. Ground VII: That Stockebrand and Digital failed to disclose the prior sale of the system in violation of the duty to disclose. 35 CFR § 1.56(a).

In support of this ground, the USPTO relied upon the same evidence as recited in the decision to support the above grounds, and determined that, presumably because The Patent Act specifically forbids the issuance of patents when an invention was "on sale in this country more than one year prior to the date of the application", 35 U.S.C. § 102(b), the applicant's contemporaneous knowledge of such pre-November 1963 sales and failure to disclose the sales, see 37 CFR § 1.56 (1979), was a ground to strike the application.

4. Ground VII: That Stockebrand withheld literature which described the most pertinent prior art known to himself or plaintiff in violation of the applicant's duty of disclosure.

The decision cites numerous references in Stockebrand's depositions to literature existing in 1963 describing "LINC Tape", which the parties stipulated to be "the most pertinent prior art known to Stockebrand, DEC or DEC's attorneys." Because the information was not filed, nor disclosed in any way, and because the USPTO concluded that such information would clearly be material in addressing the requirements of 35 U.S.C. § 103, the failure to disclose the information, as required by 37 CFR § 1.56(a), provided grounds to strike the application.

On the basis of the evidence cited in the April 1978 decision to support the decision to strike Stockebrand's application for reissue, partly recounted above, I determine that the Commissioner's finding that there was clear and convincing evidence of fraud as prohibited by the Patent Act was not arbitrary and capricious nor an abuse of discretion and the decision, accordingly, stands. 5 U.S.C. § 706(2).

In summary, because the action taken by the Commissioner was a correct application of a proper regulation which legally implemented a constitutionally satisfactory statute, and was sufficiently supported by evidence in the record, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is, as to all claims, allowed. Judgment may be entered for defendants.